### CITY OF LOWELL *vs.* PROPRIETORS OF LOCKS AND CANALS ON MERRIMACK RIVER.

An alteration in the location of an existing highway was made by the county commissioners, upon the petitioner's land, and under his agreement to bear the whole expense. He was constructing a canal across his land, and had nearly finished digging the trench through the place of the new location at the time thereof; and he proceeded to build the new way and the canal together, and carried the way over the canal upon a bridge which was finished before water was let into the canal. *Held,* that he was liable for the subsequent expenses of maintaining and keeping in repair the bridge over his canal.

The proprietor of a canal built across a highway which is subsequently traversed by a horse railroad is not exonerated by the St. of 1866, c. 286, § 1, from his liability in the first instance to the town or city for the expenses of repairs made within the location of the railroad in the bridge which conducts the highway over the canal.

CONTRACT to recover money expended by the plaintiffs in repairing a bridge across a canal in Lowell. Writ dated November 25, 1867. Trial, and verdict for the plaintiffs, in the superior court, before *Putnam,* J., who allowed the following bill of exceptions:

" It was admitted that the repairs were necessary, and that the defendants were requested to make them and declined to do so ; and no question was made that the amount sued for was properly expended. The canal crosses Merrimack Street, which is a county road; and the bridge is over the canal where it crosses the road. The defendants admitted that they built the bridge prior to Thanksgiving day 1831, and have ever since maintained it, kept it in repair, and exercised ownership over it, subject to public travel. It appeared in evidence that, prior to 1828, there was an old county road, and the defendants owned the land on both sides of said road, including the land where the

new highway was laid out as hereinafter mentioned, and also the fee in said old road. It was not contended by the plaintiffs that the defendants constructed the canal under the St. of 1792, *c.* 13, but under the St. of 1824, *c.* 47, the land being purchased by them of the Merrimack Company. On September 10, 1828, the defendants petitioned the county commissioners of Middlesex to discontinue the old road between certain points named, and in lieu of it to lay out a new highway. The commissioners adjudicated the new way to be of common convenience and necessity January 5, 1829; and made the location April 8, 1829. The bridge in question is over said new way; except perhaps a small portion at one corner of it, which it was contended by the plaintiffs, but disputed by the defendants, was within the old highway not discontinued by the commissioners."

Copies of the defendants' petition and of the record of the county commissioners were made a part of the bill of exceptions; by which it appeared that in petitioning for the alteration of the way the defendants agreed " to bear the whole expense of the alteration," and that in laying out the new way the commissioners awarded no damages to any one, and adjudged that in their opinion " no damages are sustained by any one thereby," and laid it out " to be completed and finished by the petitioners, by their own consent and agreement," on or before November 1, 1829.

" The defendants offered evidence tending to prove that, before the laying out of the new way, and as early as the spring of 1828, they, under contract with certain persons therefor, had begun to dig the canal, both north and south of said new way, under a corporate vote of September 3, 1827, and that, before April 8, 1829, and at that time, in prosecuting the work of making said canal, they had dug a trench across the place where the bridge was afterwards built;" (which trench the parties, at the argument on these exceptions in this court, agreed that there was evidence tending to show was dug " with sloping banks, to the full depth of the canal, and wide enough to drive a team of oxen through under where the bridge was afterwards put on, but not to the full width of the canal at the top ; ") " that they

were constructing said canal at the same time they were making the new way; that they put the bridge over the canal shortly before the water was let into it, in the fall of 1831; that they let the water into said canal upon Thanksgiving day 1831; and that the new way was not travelled until the bridge was erected.

" It was in evidence that the Lowell Horse Railroad Company ┃y consent of the mayor and aldermen of Lowell, had laid their tracks through Merrimack Street and over the bridge; and that the repairs were made within the limits of said tracks and eighteen inches each side of them.

" The defendants requested the judge to rule, that, a canal or watercourse being in course of construction by a party through his own land, and a highway being laid out over such canal or watercourse while being so constructed, the party so constructing the canal or watercourse being, in the proceedings of the laying out, ordered to make the highway agreeably to his own offer to bear the whole expense of making the same, and having made the road agreeably to the order, with a bridge over the canal or watercourse, said party is not bound to maintain the bridge; that, it appearing that the canal was begun early in 1828 and finished in 1831, and that the highway was located by the county commissioners, and built by the defendants, together with the bridge, simultaneously with the construction of the canal, the defendants would not be liable to support the bridge so erected by them in the construction of the highway; and that the defendants were not liable to pay any part of the bill, but that the Lowell Horse Railroad Company were liable for it.

" The judge declined so to rule, and ruled that the laying out of the highway by the county commissioners on April 8, 1829, established the place of the bridge as an existing highway at he time, so far as to determine the right of the defendants to ᴧhe use of the land within the location for private purposes inconsistent with its use as a way; that the use of the place of the way by a canal after that time and the construction of a bridge over the same would impose upon the defendants the duty of maintaining a suitable bridge over it; and that this was so, though it might be proved that, before the time of said lay-

ing out, the defendants had begun to dig the ground for a canal, and had dug to the extent claimed by the defendants, across the place of the way, with the intention of completing it, and actually did complete their canal afterwards, so as to let water into it in November 1831.

" The judge also instructed the jury that the plaintiffs were entitled to recover, though the repairs for which the suit was brought were all made within the limits which the Lowell Horse Railroad Company were bound by law to maintain in repair, and that the obligation of said railroad company to make repairs of the bridge would not relieve the defendants from their liability to keep in repair the bridge or any part of it. To these rulings and refusals to rule, the defendants excepted."

*D. S. Richardson & G. F. Richardson,* (*H. G. F. Corliss* with them,) for the defendants.

*T. H. Sweetser & G. Stevens,* for the plaintiffs.

COLT, J. The law, which imposes the duty of erecting and maintaining bridges in a public highway over artificial watercourses, was stated by Chief Justice Parsons in the early case of *Perley* v. *Chandler,* 6 Mass. 454, 458 : " If a highway be located over watercourses, either natural or artificial, the public cannot shut up these courses, but may make the road over them by the aid of bridges. But when a way has been located over private land, if the owner should afterwards open a watercourse across the way, it will be his duty at his own expense to make and keep in repair a way over the watercourse, for the convenience of the public." " This obligation upon the owner arises from the consideration that, when the way was located, the public were to be considered as purchasers of the easement, by the payment to the owner of all damages which he sustained in consequence of the easement ; and among other causes of damage might be estimated the inconvenience of opening a watercourse at his own expense."

The controversy in this case arises from the difficulty of applying these plain principles to the facts presented. The way in question was located upon the petition of the defendants, and was in fact an alteration of an old county road, made for

their accommodation, upon an agreement on their part to bear the whole expense. The corporation owned the land on both sides of the old road, including the land where the new way was located, and at the time of the final location had made some progress towards the completion of a canal across the new road. This canal made the bridge in question necessary. The work of building the new road and bridge was done by the defendants, under their agreement to be at the whole expense, and was carried on at the same time with the construction of the canal. But the bridge was completed before the water was let in.

Upon this state of facts, the court was requested substantially to rule that the defendants were not liable to support the bridge. We are of opinion that the request was rightly refused. It may be true, when a highway is located over land across which the owner, intending to make a beneficial use thereof, has commenced the construction of a watercourse, that the public easement must be subject to such prior appropriation, indicated by an actual commencement of the work; so that the original cost of the bridge and the burden of its future support will be on the public. In such case, the bridge should be ordered as a part of the original location and construction of the way. The difficulty is, that, under the peculiar circumstances of this case, the fact that there was a partial construction of the canal before the final location of the road is not decisive of an intention on the part of the defendants to make a prior appropriation so as to throw the burden of the bridge upon the public. The double position which they occupied, as builders of the road, under an agreement to be at the whole expense, and also landowners, having the right to compensation, and the use of the land subject to the public easement, takes away the otherwise significant character of the fact relied on. In determining what weight to give to it, the situation and conduct of the parties must be taken into consideration. In this way, we arrive at the real intention of the defendants. It is plain that the cost and support of a bridge, at the point in the old county road where it was crossed by this canal, would have been upon the defendants, if

this alteration in the road had not been made. It is not to be supposed that they intended, by the change which they asked for, to escape this obligation. The location under which they constructed the road makes no mention of the bridge. There is nothing in the original transactions to show that it was not built by them under their obligation as landowners, and not as contractors or agents in the building of the road. And the fact that they have exercised ownership over it, and kept it in repair ever since, is strong evidence that it was built with the understanding that the legal obligation to maintain was upon them, because there had been no intended appropriation to the uses of a canal which took precedence of the location. The defendants' original petition contained an assurance, in substance, that no additional burden should be put upon the public. Upon the whole, as this case was presented, there was no injustice done to the defendants by the instruction given to the jury upon this point.

The jury were further instructed that the plaintiffs were entitled to recover, although the repairs for which this suit was brought were all made within the limits which the Lowell Horse Railroad Company were bound by law to repair. Under the St. of 1866, *c.* 286, § 1, every street railroad is required to keep in repair, within certain limits, such portions of the streets, roads and bridges as are occupied by its tracks, to the satisfaction of the proper officer having charge of the streets or highways; and is made liable over to the city or town, in case any recovery is had for any defect or want of repair, provided it has had notice and opportunity to assume the defence of the suit. The statute does not relieve the city from its obligation to keep the streets, over which a street railroad is located, safe and convenient for public travel. It authorizes, for the public benefit, the use of the highway for a peculiar mode of travel, on certain conditions. The city may enforce the performance of the conditions; but all the provisions of the statute imply that the city is primarily liable for want of repair. It is not necessary to decide whether its provisions make the railroad ultimately liable to the defendants. We are of opinion that it does not exon-

erate the defendants from their liability in the first instance to the city. As respects this liability, the bridge over the defendants' canal remains a private structure, for the repair of which they are responsible directly to the city. *Middlesex Railroad* v *Wakefield*, 103 Mass. 261. The defendants have no just ground to complain of the instructions given on the point.

*Exceptions overruled.*