CITY OF WATERLOO v. UNION MILL CO. ET AL.

1. **Cities and Towns**: EFFECT OF PLATTING: RESERVATION FOR MILL-RACE: LIABILITY FOR BRIDGING. The acknowledgement or recording of a town or city plat is equivalent to a deed in fee simple of such portion of the platted premises as are set apart for streets; and by the reservation, in such act, of the right to construct and use a mill-race across one of the streets included in the plat, the owners of the land platted simply retain an easement in such street; and when such race is constructed, they are bound to construct and keep in repair a bridge across the same where it cuts the street; and, when they neglect and refuse so to do, and the city repairs the bridge at its own expense, it may recover the same of the owners of the race.

*Appeal from Black Hawk Circuit Court.*

WEDNESDAY, OCTOBER 4.

THIS is an action in equity for the recovery of an amount expended in repairs of a certain bridge, and for a decree determining upon whom rests the obligation to keep the bridge in repair. The defendant, Black Hawk County, filed a demurrer to the petition which the court sustained. The defendant, the Union Mill Company, filed an answer and upon the trial the court dismissed the plaintiff's petition. The plaintiff appeals.

*George Ordway* and *J. L. Husted*, for appellant.

*Alford & Gates*, for the Union Mill Company.

*M. L. Owens*, for Black Hawk County.

DAY, J.—Upon the submission of the cause the following facts were agreed to: That June 24th, 1854, one Charles Mullan, being the owner of all the land hereinafter referred to, with others, platted the town of Waterloo, located on both sides of Cedar River, which runs southerly through the same. The portion of said land owned by said Mullan was bounded on the northeasterly side by Cedar River, on which, and adjacent to said plat, was a valuable mill site. Within said tract and bounded on three sides thereby, and on the other by Cedar River, was a tract about three hundred feet square not platted into streets and lots but designated on said plat as "Mill Square." On December 29th, 1856, A. C. Couch, R. W. Chapman and Thomas Jasylin were owners of the legal title of said mill square, and on that day, by George W. Couch, their attorney in fact, they in due form platted the same as an addition to Waterloo and duly acknowledged and recorded the plat. The plat shows Bridge street to be sixty feet wide, and running northeasterly from Commercial street to river. The dedication upon said plat by the owner of said property is as follows: "We  *  *  *  who are the owners of mill square, hereby acknowledge the disposition thereof as set forth in the annexed plat to be in accordance with our wish and desire, signed this 29th day of December eighteen hundred and fifty-six, and hereby relinquish all our right to that part described, except the right to construct and use a race fifty feet wide across Bridge street and alleys." Soon after the recording of said plat of mill square there was erected, by voluntary subscription of the people of said town and vicinity, a bridge across Cedar River, about six hundred feet long, abutting on Bridge street as designated on said plat of mill square on the westerly side of

said river, and on ground opposite the end of Fourth street—as designated on the original plat—on the easterly side of the river; and thereupon the proper officers of Waterloo township assumed control of said Bridge street and kept the same in repair, and the same was thereafter used as a public highway.

In the summer of 1860, proceedings were instituted for the establishment of a county road commencing at a point westerly from the westerly end of Fourth street, and running northeasterly along Fourth street to Commercial street; thence, northwesterly along Commercial street to the point of intersection with Bridge street; thence northeasterly along Bridge street and crossing Cedar River along the line of said bridge; and on September 3d, 1860, said county road was established in due form of law, extending over said Bridge street, but no claim for damages was made by the owners of Mill square on account of the establishment of said road, and no damage was ever paid such owners therefor. And thereupon said county of Black Hawk assumed control of said bridge over Cedar River and has since maintained and kept in repair a bridge at said point, except that the city of Waterloo contributed at one time a portion of the costs of building a new bridge across Cedar River. And since the establishment of said county road, said township of Waterloo, since its organization as such, assumed control of and has kept in repair said Bridge street, except the repairs on the bridge across the race hereinafter mentioned. Prior to 1866, George W. Couch, by several quitclaim deeds from parties who executed and acknowledged the plat aforesaid, acquired the legal title to said Mill square. June 6th, 1866, George W. Couch, for the consideration of $3000, conveyed by warranty deed to Charles Blasberg, George P. Beck, and William Liede, a portion of the Mill square lying southeasterly of Bridge street, together with a part of the water-power adjoining said Mill square, which had, in 1854, been improved by a dam built across Cedar River northwesterly

of said Bridge street, and was then, and prior, used to operate mills above said Bridge street. This deed conveys one-twelfth of the water-power created by the dam across Cedar River, to be taken on said premises from a race to be used in common with the other parties now, and who may hereafter become, interested in said water-power. The deed recites that the grantees are to be to one-twelfth of the expense of keeping said dam in repair, and one fourth of the expense of keeping said race in repair, and also one fourth the bridge over said race, and covering of said race when necessary. In the summer of 1866, Blasberg and the other grantee in said deed entered into possession of said land and erected thereon, southeasterly and below Bridge street a woolen mill, which was to be operated by water taken from the dam above Bridge street and carried through a race to be constructed from a point in the river above the dam across a portion of the Mill square and across Bridge street, to said woolen mill.

In the summer of 1867, said George W. Couch constructed the race aforesaid as contemplated, being at the point where it crosses Bridge street about fifty feet wide, and about ten feet deep, and the same has since been used to conduct water from the dam above said Bridge street to the mills below, and is now so used, and, unless bridged, is impassable and wholly prevents the use of said Bridge street as a public highway. In the construction of said race, Couch acted on his own motion, without soliciting or obtaining consent of any public authority, claiming that the reservation in the dedication of said Mill square plat authorized him to construct said race. The officers of Waterloo township and Black Hawk county knew of the construction of said race, and neither objected, nor by official action consented thereto. Before he had proceeded far enough to interfere with travel along the southeasterly side of Bridge street, Couch caused a temporary bridge to be thrown across on, or near, the northerly side of Bridge street, so as to enable the public to cross the same and, as soon as the said race was completed across

said Bridge street, said Couch and Blasberg, and others, owners of said water-power, of their own accord, and at their own expense, constructed a substantial wooden bridge across said race within the boundaries of Bridge street, and built approaches thereto, which bridge was about fifty feet in width and about forty feet extending up and down said race. Couch contributed three-fourths, and Blasberg, Beck and Liede, one-fourth of the expense of building said bridge.

On the 29th day of September, 1867, George W. Couch, and Elwell, Hungerford, Manson & Bagg formed a co-partnership for the erection of a flouring mill, and the manufacture and sale of flour, and George W. Couch deeded to Elwell, Hungerford, Manson and Baggs, an undivided four-fifths of a portion of said premises, the deed reciting that said parties are jointly to stand and be in relation to said property in the same condition in the ownership as Couch stood in before the execution of the deed, and that the firm assumed the responsibility of Couch in the maintenance of the dam and repair of the same as well as the race. Soon after the construction of said race, George W. Couch, with others, adopted articles of incorporation of the Waterloo Mill Company, and thereafter said Elwell and others conveyed to said corporation certain lands on Mill square below Bridge street, and said corporation in 1869 or 1870 built thereon a flouring mill, and used the water-power drawn through said race to operate said mill. This deed contains the following recitals;

"It being understood, and this deed is accepted by said Waterloo Mill Company, subject to all the rights, conditions, stipulations and reservations, with reference to said water-power and the rebuilding and repair of the same, as the said grantors are entited or subject to, said Waterloo Mill Company standing in place of said grantors and assuming all the responsibilities of said grantors in relation to the repairing, rebuilding and maintaining said dam and race." From the time of the construction of said race till the 18th day of June, 1873, Couch and Blasberg and others, and the Waterloo

Mill Company kept said bridge so built over said race in repair. On the 18th day of June, 1873, the Waterloo Mill Company conveyed said Mill property to the Union Mill Company, a corporation, which went into possession of said property under said deed, and has ever since used and enjoyed and operated said mill with water drawn through said race across Bridge street. The deed to the Union Mill Company contains the same recital as that contained in the deed to the Waterloo Mill Company. Afterward, the Union Mill Company by several quitclaim deeds became invested with the interest of Blasberg, Liede and Beck, subject to all the conditions, restrictions and reservations contained in the deed under which they acquired their title. At the time of the making of the repairs by the city, and at the commencement of this action, the Union Mill Company was the owner of all the mill property lying southeasterly of and below Bridge street, and was using water taken through said race, and held the same under the deeds above mentioned.

As soon as the plat of Mill square was made and recorded, the public accepted and assumed control of said Bridge street, and the same was improved and kept in repair thereafter by the proper officers of Waterloo township, and after the incorporation of said city, the same, except the said bridge across said race, was kept in repair by the proper officers of said city. The entire travel across Cedar River, which divided said city into two nearly equal parts, crosses said river across said bridge and Bridge street. The evidence shows that in October, 1879, the bridge across the mill race was in an unsafe condition and in need of repairs, and the city of Waterloo caused a notice to be served upon the Union Mill Company that the bridge was unsafe, and a demand that they put it in a safe condition. The Union Mill Company failed to repair the bridge, and in 1880, the city of Waterloo repaired it at a cost of $138.75, and in April, 1880, demanded that amount of the Union Mill Company.

I. The acknowledgment and recording of the town plat

was equivalent to a deed·in fee simple of such portions of the premises platted as were set apart on the plat for streets. Code, § 561. By the reservation of the right to construct a race across Bridge street, the owners of the land platted retained an easement in said street, the fee in which passed from them by the acknowledging and recording of the plat. By the retaining of a mere easement, the owners of the land can in no sense be regarded as having greater rights in the street than the owner of lands over which a highway is laid out and constructed, who still retains the fee in the soil, subject to a mere easement in the public.

The law is well established that the owner of lands over which a highway is established, who constructs a mill race across the highway, is bound to erect and maintain a bridge across the race at his own expense. See *Dygest v. Schenck*, 23 Wend., 445; *Perley v. Chandler*, 6 Mass., 454; *City of Lowell v. Proprietors of Locks and Canals*, 104 Mass., 18; *Heacock et al. v. Sherman*, 14 Wend., 59; *Phœnixville v. Phœnix Iron Co.*, 45 Pa. St., 135. For reasons equally potent, the parties constructing the race in question in this case, are bound to construct and keep in repair a bridge across the same.

II. There is another ground of decision which leads to the same conclusion. It is conceded by the appellee that the reservation of the owners of the land of the right to construct a race across Bridge street is to be construed precisely the same as though the city of Waterloo, owning the fee in the street, had granted to the defendant the Union Mill Company, the privilege of constructing a race across the street.

That a reservation should be construed in the same way as a grant by the owner of the soil of a like privilege, see *French v. Cahart*, 1 Comst., 96 (103). Nothing passes as an incident to a grant of an easement but what is requisite to its fair and reasonable enjoyment. *Amondson v. Severson*, 37 Iowa, 602 (606). Now it is not essential to the enjoyment of a grant of the right to cut a mill race across a street,

that the grantee should be allowed to leave the street severed in two parts. The street may be united by means of a bridge, and it is not at all inconsistent with the full enjoyment of the easement that the grantee should be required to restore the street, as nearly as possible, to its former condition, by the construction and maintenance of a bridge across it. *In re The Trenton Water-Power Company*, 20 N. J., 659, where a private corporation was authorized by its charter to construct a canal, and the company cut the same across a public highway, rendering a bridge necessary where none was required before, it was held that the company must construct and maintain such bridge. The reasoning of this case is fully applicable to the case at bar. The plaintiff, in our opinion, is entitled to recover of the defendant, the Union Mill Company, the amount expended in repairs of the bridge in question.

REVERSED.