New York Central Railroad Company *vs.* Central Vermont Railway Company.

Suffolk.    March 24, 1922. — November 1, 1922.

Present: Rugg, C.J., Braley, De Courcy, Crosby, & Jenney, JJ.

*Railroad. Grade Crossing. Contract,* Implied, Construction. *Landlord and Tenant,* Construction of covenants in lease. *Evidence,* Secondary, Declaration of deceased person. *Covenant,* Running with land.

The New York Central Railroad Company, as lessee of the railroad franchise and property of the Boston and Albany Railroad Corporation, which by St. 1867, c. 270, was a consolidation of the Western Railroad Corporation and the Boston and Worcester Railroad Corporation, brought an action of contract against the Central Vermont Railway Company, purchaser at foreclosure sale of the property and franchise of Central Vermont Railroad, assignee of a lease given to the Consolidated Railroad Company of Vermont by the New London Northern Railroad Company, conveying, among other property, the railroad and property which it had received by purchase and deed from the Amherst, Belchertown and Palmer Railroad, successor to all the property of the Amherst and Belcher-

town Railroad Company incorporated by St. 1851, c. 277. The plaintiff sought recovery of $324.06, the expense of installing a "new crossing and crossing frogs at Palmer, Massachusetts, July 26–30, 1915." The action was heard by a judge without a jury. It was undisputed that these repairs were reasonably required, that the amount expended therefor was fair and reasonable, and that the plaintiff had requested the defendant to make them. *Held,* that

(1) A finding by the trial judge that "in consideration of the Western Railroad Corporation waiving its right to petition for damages, the Amherst and Belchertown undertook to maintain and keep in repair the structures and appliances at the Palmer crossing, and that, in fact, it did maintain and keep them in repair, at its own expense, as long as it operated the road," was warranted by the evidence which, among other things, showed a report of the president of the Western Railroad Corporation to his directors specifically referring to such contract and an entry in their cash book of the receipt from the Amherst and Belchertown Railroad Company of $54.21 in December, 1861, for frogs and labor at the crossing;

(2) At this late day, after the earlier corporations through which the defendant took title have ceased to exist and many of the records are lost or destroyed, the practical difficulty of tracing the details of this relatively minor transaction is apparent and, although the contractual obligation to repair the crossing did not devolve upon the Amherst, Belchertown and Palmer Railroad by reason of the conveyance from its predecessor, evidence that the Western Railroad Corporation did the repairs and that the Amherst, Belchertown and Palmer Railroad paid it therefor warranted a finding by the trial judge that the repairs were done in fulfilment of a legal obligation arising from a contract between those corporations; and evidence that the New London Northern Railroad Company, which purchased the railroad from the Amherst, Belchertown and Palmer in 1864 and operated it until 1891, paid bills for repairs on the crossing warranted a finding that "the New London was under a contractual obligation to the Western (and its successor the Boston and Albany) to bear the expense of keeping the crossing in repair," although the judge did not determine whether this obligation arose from a new agreement made by the New London Northern Railroad Company, or from an assumption of the agreement made by its predecessor in title, or was based on the provisions of the Connecticut special statute of January 15, 1864, subjecting such railroad corporation "to all the restrictions and liabilities of said Amherst, Belchertown and Palmer Railroad Company;"

(3) Provisions and covenants in a lease by the New London Northern Railroad Company to the Consolidated Railroad Company of Vermont, whereby the lessee covenanted, among other things, "that it will keep and perform all and singular the contracts which are now in force and binding on the lessor, enumerated in the Schedule hereto attached, marked 'C'" which schedule included "Contracts with Boston & Albany R.R. Co., about Palmer Depot . . . and all contracts about . . . rights of way," and also covenanted "that it will . . . maintain said demised premises and property during said term in good order, repair and efficiency, replacing and renewing whatever becomes defective, worn out or dangerous" and "to perform all the duties imposed by law upon the lessor (while it is operating said road) and during the continuance of this lease, to act and be in the place of and as a substitute for the lessor in all respects whatsoever as the party entitled to and responsible for the opera-

tion and management of the demised property," were broad enough to include the repair of the crossing appliances at Palmer, which were part of the defendant's railroad as well as of the plaintiff's, and under them the Consolidated Railroad Company of Vermont covenanted with the New London Northern Railroad Company to perform its contractual obligation to the Western Railroad Corporation and its successors in respect to the repair of the Palmer crossing;

(4) The covenants in the lease above described ran with the land, and therefore, after an assignment by the lessee to the Central Vermont Railroad Company, which agreed "to fully pay, discharge and fulfil each and every obligation in said lease contained to be performed by or in the part of said Consolidated Railroad Company of Vermont," which was followed by a merger of the two companies, and a foreclosure of a mortgage whereby the defendant succeeded the Central Vermont Railroad Company in the operation of the road, the defendant came under a contractual obligation to the New London Northern Railroad Company to repair the crossing at Palmer although the foreclosure deed to the defendant did not in terms recite that the purchaser should perform all the covenants of the original lessee;

(5) Since both the plaintiff and the defendant were under a public duty to keep the crossing in repair and the defendant's duty, by reason of its obligation to the New London Northern Railroad Company and the contract of that company with the plaintiff through its predecessor, was primary, it was not necessary for the plaintiff, in order to recover for its outlay in making the repairs after having requested the defendant to do so, to pursue its remedy against the New London Northern Railroad Company, but it was entitled to recover in this action directly from the defendant;

(6) It was not necessary, either at the time when the grade crossing first was constructed or at the time when the repairs in question were made to have their expense apportioned by the board of railroad commissioners under R. L. c. 111, §§ 185, 186, as these provisions did not preclude the railroad corporations interested from making a contract about the apportionment of the expense of repairs at crossings;

(7) In the circumstances found by the judge, the statutory right of the Western Railroad Corporation to recover for the entire repair at the crossing from time to time, on a petition for the assessment of damages at the time the crossing was constructed, was waived by the contract between that company and the Amherst and Belchertown Railroad Corporation;

(8) Although the exact physical position of the crossing of the two railroads was different in 1915 from what it was originally, the trial judge was warranted in finding that the crossing upon which the repairs were made was in legal effect the same as that originally constructed by the Amherst and Belchertown Railroad Company over the tracks of the Western Railroad Corporation.

At the hearing of the action above described, reports, dated May 8, 1852, and October 15, 1852, made by the president of the Western Railroad Corporation to its directors, were offered by the plaintiff and were admitted subject to exceptions by the defendant. It appeared that they were original reports, signed by the president, and that they were offered as secondary evidence to prove the making and contents of a lost or destroyed contract between that corporation and the Amherst and Belchertown Railroad Company with reference to the maintenance of the crossing at Palmer. In them the president

recited facts and made recommendations about matters which he apparently was negotiating personally and made a statement that a contract had been made by the two corporations and said "The A and B Road to maintain the frogs, switches, etc., at their own expense." *Held*, that

(1) A finding that the statements of facts in the reports were upon the personal knowledge of the declarant was warranted;

(2) The reports were not open to the objection that they contained statements of opinion and conclusions of law which were inadmissible.

CONTRACT, with a declaration as amended in four counts. The first count, which alone now is material, was upon an account annexed for $324.06, the expense of installing a "new crossing and crossing frogs at Palmer, Massachusetts, July 26–30, 1915." Writ dated March 15, 1916.

The action was heard in the Superior Court by *McLaughlin*, J., without a jury.

At the request of the defendant, the judge gave the following ruling:

"There is no sufficient evidence of the term or other provisions of any contract between the Amherst and Belchertown Railroad Company and said Western Railroad with respect to the repair and maintenance of said crossing such as would warrant the court in holding that the defendant is liable under such contract for the labor and materials for which recovery is sought under the first count of the plaintiff's declaration."

At the request of the defendant, the judge gave all of the following ruling except that portion enclosed in brackets:

"Under the provisions of Rev. Sts. c. 39, §§ 56, 57, the Western Railroad was entitled to recover all damages occasioned by the location and construction of the railroad of the Amherst and Belchertown Railroad Company across its tracks. Such damages included the expense of maintenance and repair of said crossing. The remedy given by said Statutes is exclusive [and precludes the plaintiff from recovering for the expense of said repair and maintenance in this action]."

The defendant asked for the following ruling:

"There is no evidence that the crossing of which the expense of repair and maintenance is sought to be recovered is the same crossing as that made by the construction of the railroad of the Amherst, Belchertown and Palmer Railroad Company for the railroad of the Western Railroad." This ruling the judge gave "in

the sense that the present crossing was not in the same position as originally."

The judge denied a motion by the defendant that the finding be in its favor and refused to rule that there was no evidence warranting a finding for the plaintiff. He also refused requests by the defendant that he rule as follows:

"5. The Amherst and Belchertown Railroad Company did not by locating and constructing its railroad across the tracks of the Western Railroad under the St. 1851, c. 277, come under any obligation to said Western Railroad to maintain and keep in repair the crossing of said railroad at said place or to bear the expense of the repair and maintenance of said crossing."

"9. There is no evidence of any contract or agreement, express or implied, between the plaintiff and the defendant whereby the defendant agreed with the plaintiff to maintain and keep said crossing in repair or to bear the expense of the repair and maintenance thereof."

"23. If the crossing of which the expense of repair and maintenance is sought to be recovered under the first count of the declaration is not the same crossing as that made by the construction of the railroad of the Amherst and Belchertown Railroad Company over the railroad of the Western Railroad, the plaintiff is not entitled to recover."

32 and 34. Either that in "1883, at the time of the discontinuance of the crossing in use at that time and the installation of the present crossing of the road of the Boston and Albany Railroad Company and the New London Northern Railroad Company," or that "at the time the repairs for the expense of which recovery was sought in this action, the Board of Railroad Commissioners had exclusive jurisdiction to determine in the first instance the proportion of the repairs and maintenance of the crossing to be borne by the respective railroads where two or more railroads cross each other at grade, and in the absence of such apportionment of the amount by such Commissioners this action cannot be maintained."

"39. There is no evidence of such a course of dealing between the corporations under whom the defendant claims title and the corporations under whom the plaintiff claims title as to warrant the court in finding that any of the corporations under whom the

defendant claims title were at any time under any duty or obligation to any of the corporations under which the plaintiff takes title to keep said crossing in repair."

Other material findings and rulings, contained in a memorandum filed by the judge, which was a part of the bill of exceptions, were as follows:

"Apart from any obligation imposed by law, what contractual obligation, if any, existed on the part of each of the predecessors in title of the defendant, as successively they operated the defendant's railroad, towards the corporation then operating the plaintiff's road?

"A railroad corporation over whose railroad a highway or other railroad was laid out, was entitled by the law of the Commonwealth to compensation therefor . . . and included in the damages would be the expense of making and maintaining in repair the appliances and structures designed to make the crossing safe and convenient for the traffic of both roads, and this was the law when the Amherst and Belchertown located its tracks across those of the Western. . . .

"If the parties could not agree upon the damages or some form of indemnity, the remedy was by petition. But instead of resorting to a petition for damages, it was open to the Western Railroad to agree with the Amherst and Belchertown upon some measure of compensation in lieu of that which the law provided, and, I find, that in consideration of the Western Railroad waiving its right to petition for damages, the Amherst and Belchertown undertook to maintain and keep in repair the structures and appliances at the Palmer crossing, and that, in fact, it did maintain and keep them in repair, at its own expense, as long as it operated the road.

"When, however, the Amherst and Belchertown was conveyed to the Amherst, Belchertown and Palmer, this contractual obligation did not devolve upon the grantee nor was it assumed by said Amherst, Belchertown and Palmer. During the period, however, or a part of the period from November 1, 1858, to February 29, 1864, when the Amherst, Belchertown and Palmer operated the road, the Western Railroad performed the work of keeping the crossing in repair, and presented the bills therefor to the Amherst, Belchertown and Palmer which paid them in due

course. This was evidence that the repairs were done in fulfilment of a legal obligation arising from an agreement between the Amherst, Belchertown and Palmer and the Western, and I find that there was such an agreement by the terms of which the Amherst, Belchertown and Palmer bound itself to bear the expense of keeping said crossing in repair. . . .

"Between February 29, 1864, when the Amherst, Belchertown and Palmer conveyed its railroad to the New London Northern, and October 17, 1891, when the New London Northern leased the railroad to the Consolidated Railroad Company of Vermont, and during which period the road was operated by the New London Northern, bills for repairs were frequently presented to said New London Northern by the Western (and by its successor the Boston and Albany) and were paid by the New London Northern in due course. This was evidence that the repairs were paid for in fulfilment of a legal obligation arising from an agreement between the New London Northern and the Western (or its successor the Boston and Albany) or in consequence of assuming the liability in this respect of its immediate predecessor, the Amherst, Belchertown and Palmer, or in compliance with the provision of the Connecticut act quoted above, that the New London Northern should 'have and enjoy all the rights and privileges and be subject to all the restrictions and liabilities of, said Amherst, Belchertown and Palmer Railroad Company.' In any of these aspects, I find that the New London Northern was under a contractual obligation to the Western (and its successor the Boston and Albany) to bear the expense of keeping the crossing in repair.

"Was there a contractual obligation on the part of the defendant, the Central Vermont Railway Company, to the plaintiff, or its predecessors in title, to bear the expense of keeping the crossing in repair? The defendant was the assignee of the assignee of the lease of the New London Northern to the Consolidated. The language of the covenants therein, which related to the maintenance and repair of the railroad was broad enough to include the repair of the crossing appliances at Palmer, which were part of the defendant's railroad, as well as of the plaintiff's. These covenants ran with the land, and were as binding as between the defendant, the assignee of the assignee of the original lessee, and

the New London Northern, the lessor, as if the defendant were the original lessee. . . .

. "Can the plaintiff avail itself directly of the obligation thus existing between the defendant and the New London Northern, or is it relegated to its action against the New London Northern?

"As the operators of railroads, a direct public duty and responsibility devolved by law upon both plaintiff and defendant to maintain and repair their tracks and the appliances connected therewith, including the frogs and switches, the cost of repairing which the plaintiff seeks to recover, and which were integral parts of each railroad.

"This public duty created by law supplies, in my opinion, the privity of contract which otherwise would be lacking as between the plaintiff and defendant and implies the promise and obligation on which this action is founded. . . .

"Circuity of action is thus avoided and, as I view it, the action lies directly against the corporation upon which the duty of maintenance rests by public as well as by private obligation."

The judge found for the plaintiff in the amount claimed in the account annexed with interest, $421.26; and the defendant alleged exceptions.

*P. N. Jones,* for the defendant.

*C. O. Pengra,* for the plaintiff.

DE COURCY, J.   This action was brought to recover the expenses incurred by the plaintiff in making certain repairs at the crossing in Palmer where the defendant's railroad intersects and crosses that of the plaintiff. It was undisputed that these repairs were reasonably required; that the amount expended therefor was "fair and reasonable;" and that the plaintiff had requested the defendant to make them. The case was tried by a judge of the Superior Court sitting without a jury. He sustained demurrers to the second and third counts, made comprehensive findings of fact, and found for the plaintiff in the amount claimed in the account annexed.

In 1852 or 1853 the Amherst and Belchertown Railroad Company, under the authority given by its charter (St. 1851, c. 277) located and constructed its railroad so as to cross the tracks of the Western Railroad Corporation. The judge found that "in

consideration of the Western Railroad waiving its right to petition for damages, the Amherst and Belchertown undertook to maintain and keep in repair the structures and appliances at the Palmer crossing, and that, in fact, it did maintain and keep them in repair, at its own expense, as long as it operated the road." There was evidence to warrant this finding; and the defendant's requests to the contrary were refused rightly. The report of the president of the Western Railroad Corporation to his directors specifically refers to such a contract; and their cash-book showed the receipt from the Amherst and Belchertown Railroad Company of $54.21 in December, 1861, for frogs and labor at the crossing. *Lowell* v. *Proprietors of Locks & Canals,* 104 Mass. 18, 23.

The finding of the trial judge also states: "When . . . the Amherst and Belchertown was conveyed to the Amherst, Belchertown and Palmer, this contractual obligation did not devolve upon the grantee nor was it assumed by said Amherst, Belchertown and Palmer. During the period, however, or a part of the period from November 1, 1858, to February 29, 1864, when the Amherst, Belchertown and Palmer operated the road, the Western Railroad performed the work of keeping the crossing in repair, and presented the bills therefor to the Amherst, Belchertown and Palmer which paid them in due course. This was evidence that the repairs were done in fulfilment of a legal obligation arising from an agreement between the Amherst, Belchertown and Palmer and the Western, and I find that there was such an agreement by the terms of which the Amherst, Belchertown and Palmer bound itself to bear the expense of keeping said crossing in repair." He made the further finding that the New London Northern Railroad Company, which purchased this railroad from the Amherst, Belchertown and Palmer in 1864, and operated it until 1891, paid bills for repairs on the crossing, and that "the New London was under a contractual obligation to the Western (and its successor the Boston and Albany) to bear the expense of keeping the crossing in repair." The judge did not determine whether this obligation arose from a new agreement made by the New London Northern, or from an assumption of the agreement made by its predecessor in title, or was based on the provisions of the Connecticut special statute of January 15, 1864, subjecting this railroad "to all the restrictions and liabilities of said Amherst,

Belchertown and Palmer Railroad Company." At this late day, after the earlier corporations through which the defendant took title have ceased to exist, and many of the records are lost or destroyed, the practical difficulty of tracing the details of this relatively minor transaction is apparent. But the finding that a contractual obligation existed is supported by evidence of actual payments by the New London Northern of bills for labor and materials at the Palmer crossing. Indeed it is not easy to account for such payments on any other ground than the legal obligation of the New London Northern to keep this crossing in repair. *Lowell* v. *Proprietors of Locks & Canals, supra. Chicago & Alton Railroad* v. *Joliet, Lockport & Aurora Railway,* 105 Ill. 388. *New Bedford Railroad* v. *Old Colony Railroad,* 120 Mass. 397. *Whiting* v. *Malden & Melrose Railroad,* 202 Mass. 298.

In the duly authorized ninety-nine year lease of the New London Northern to the Consolidated Railroad Company of Vermont, the lessee covenanted, among other things, "that it will keep and perform all and singular the contracts which are now in force and binding on the lessor, enumerated in the Schedule hereto attached, marked C;" and included in said schedule was "Contracts with Boston & Albany R.R. Co., about Palmer Depot . . . and all contracts about . . . rights of way." It provided, in paragraph 5, "And the lessee further covenants with the lessor that it will . . . maintain said demised premises and property during said term in good order, repair and efficiency, replacing and renewing whatever becomes defective, worn out or dangerous . . ." And, by paragraph 9, ". . . the lessee covenants to perform all the duties imposed by law upon the lessor (while it is operating said road) and during the continuance of this lease, to act and be in the place of and as a substitute for the lessor in all respects whatsoever as the party entitled to and responsible for the operation and management of the demised property." The ruling of the judge that the language of the covenants "was broad enough to include the repair of the crossing appliances at Palmer, which were part of the defendant's railroad, as well as of the plaintiff's," seems to us to be fully warranted. And under this lease the Consolidated Railroad Company of Vermont covenanted with the New London Northern Railroad Company to perform its contractual obligation to the Western Railroad Corpo-

ration and its successors in respect to the repair of the Palmer crossing.

Said lease was assigned to the Central Vermont Railroad Company on December 9, 1891, the assignee agreeing "to fully pay, discharge and fulfil each and every obligation in said lease contained to be performed by or in the part of said Consolidated Railroad Company of Vermont." And this was followed by a merger of the two companies. Finally, the defendant Central Vermont Railway Company succeeded the Central Vermont Railroad Company in the operation of the road by virtue of the foreclosure of a mortgage given by the latter, in 1899. Under the foreclosure deed the defendant acquired, among other properties, the lease of the New London Northern Railroad Company, and thus became assignee of the original lessee. The foreclosure deed, unlike the assignment to this mortgagor, did not in terms recite that the purchaser should perform all the covenants of the original lessee. But, as the trial judge found, the covenant already referred to, requiring the New London Northern to maintain the Palmer crossing, ran with the land, and was as binding on the defendant as on the original lessee in favor of the New London Northern. *Spencer's Case,* 5 Coke, 16, a, b. *Hollywood* v. *First Parish in Brockton,* 192 Mass. 269, 276. *Peters* v. *Stone,* 193 Mass. 179.

The Western Railroad Corporation, under St. 1867, c. 270, became by consolidation with the Boston and Worcester Railroad Corporation a part of the Boston and Albany Railroad Corporation; and this latter leased its railroad franchise and property to the plaintiff (then entitled the New York Central and Hudson River Railroad Company).

The question whether the plaintiff can directly avail itself of the defendant's obligation to the New London Northern Railroad Company to perform the latter's contract with said Western Railroad Corporation and its successors, is not free from difficulty. Admittedly, under the present law in this Commonwealth a stranger to a contract, even though he be its sole beneficiary, cannot maintain an action at law directly against the promisor. 1 Williston on Contracts, § 367, and cases collected. But, as contended by the plaintiff, its action is not brought on the defendant's promise to the New London Northern Railroad Company,

for breach of the same, but is an action in contract to recover the expense incurred by the plaintiff in making repairs at the Palmer crossing which it was the duty of the defendant to make. The recovery on the count on an account annexed, supports this contention. The trial judge proceeded apparently on the theory that each of these parties was under a direct public duty to maintain this crossing in repair; that as between them the primary obligation rested on the defendant; and that equitably, as the plaintiff made the repairs, it could recover in this form of action their value to the defendant. In this respect the case resembles *Proprietors of Locks & Canals* v. *Lowell Horse Railroad,* 109 Mass. 221, where the plaintiff, after reimbursing the city for the expense of repairing a bridge, recovered the amount from the defendant, which was primarily liable. It was said by the court (page 224): "The duty thus imposed upon the defendants of repairing part of a bridge the whole of which, as between them and the city, the plaintiffs were obliged to maintain, was an obligation to do that which would be a benefit to the plaintiffs, assumed by the railroad corporation in the acceptance of their charter. And the plaintiffs, having been obliged to meet their liability to the city through the neglect of the defendants, are entitled to recover the amount paid in discharge of it. The duty created by law establishes the privity and implies the promise and obligation on which this action is founded. *Carnegie* v. *Morrison,* 2 Met. 381, 396. *Brewer* v. *Dyer,* 7 Cush. 337. Met. Con. 205." In *Moule* v. *Garrett,* L. R. 7 Ex. 101, 104, this statement of the principle is adopted: "Where the plaintiff has been compelled by law to pay, or, being compellable by law, has paid money which the defendant was ultimately liable to pay, so that the latter obtains the benefit of the payment by the discharge of his liability; under such circumstances the defendant is held indebted to the plaintiff in the amount." See also *Phinney* v. *Foster,* 189 Mass. 182. Woodward on Quasi Contracts, § 247. We are of opinion that the plaintiff was entitled to recover as against the defendant, and was not relegated to an action against the New London Northern.

The conclusion reached renders it unnecessary to consider whether the demurrer to the second count was sustained rightly. This involved the common law obligation of the company laying out and constructing the junior road. Other questions raised on

the merits may be disposed of briefly. The statutory right of the Western Railroad Corporation to recover for the entire repair at the crossing from time to time, on a petition for the assessment of damages at the time the crossing was constructed, was waived by the contract between that company and the Amherst and Belchertown Railroad Company. It was not necessary to have the expense of the repairs in question apportioned by the board of railroad commissioners (now the department of public utilities). R. L. c. 111, §§ 185, 186, do not purport to preclude the two railroads from making a contract about the apportionment of the expense of repairs at crossings. Finally, the trial judge was warranted in finding that the crossing upon which the repairs were made was in legal effect the same as that originally constructed by the Amherst and Belchertown Railroad Company over the tracks of the Western Railroad Corporation.

Of the exceptions taken to the admission of evidence, only two were argued; and we treat the others as waived. The reports, dated May 8, 1852, and October 15, 1852, made by the president of the Western Railroad Corporation to its directors, were introduced by the plaintiff. They were the original reports, signed by the president; and were offered as secondary evidence to prove the making and contents of a lost or destroyed contract between that corporation and the Amherst and Belchertown Railroad Company, with reference to the maintenance of the crossing at Palmer. The defendant now relies on two grounds for its exceptions to their admission. The first is that the finding that the statements made in the reports were made on the personal knowledge of the president, now deceased, was not warranted. An examination of the reports, however, shows that the president was reciting facts and making recommendations about matters which apparently he was personally negotiating. We cannot say that the judge's conclusion of fact on this preliminary question was plainly wrong. *Johnson* v. *Foster*, 221 Mass. 248, 251. The other ground argued is that the admitted portion of the second report involved a statement of opinion and conclusion of law rather than a statement of fact. We do not think it open to this objection. The statement therein that a contract had been made by the two corporations, plainly was one of fact. And we construe the words "The A & B to maintain the frogs, switches, etc.,

at their own expense" as merely a summary expression of the substance of the contract, and not a matter of opinion. No error in the admission of this evidence is shown. *Clark* v. *Houghton,* 12 Gray, 38, 44. See *Morrison* v. *Chapin,* 97 Mass. 72.

We find no prejudicial error in the conduct of the trial; and the entry must be

*Exceptions overruled.*