WILLIAM A. WHITING *vs.* MALDEN AND MELROSE RAILROAD COMPANY & another.

Suffolk.    March 18, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

Corporation. Evidence, Presumptions and burden of proof, Inferential. Street Railway, Consolidation. Estoppel. Malden and Melrose Railroad Company. West End Street Railway Company. Equity Jurisdiction.

In the absence of a statutory provision on the subject, the mere acquisition of all the capital stock, property and assets of a corporation by an individual or by another corporation does not of itself make the new holder liable to pay the debts of the vendor corporation.

In the absence of evidence to the contrary, there is a presumption that the action of a street railway corporation in the purchase under the provisions of a special statute of the capital stock, property and assets of another street railway corporation is lawful.

In the absence of evidence to the contrary, there is always a presumption that the official action of a board of public officers is lawful.

The West End Street Railway Company, after the enactment of St. 1887, c. 413, acquired by purchase from one who had purchased them from the Malden and Melrose Railroad Company all of the capital stock, property and assets of that company, and its treasurer then reported to the railroad commissioners that the

West End Street Railway Company "owned the stock and property of the Malden and Melrose Company — all of it — and would like to have the Malden and Melrose Railroad Company report omitted." The commissioners thereupon struck the Malden and Melrose Railroad Company from their lists and reported "The Malden and Melrose having been merged in the West End by the purchase of all of its capital stock and assets." Thereafter for more than twenty years the West End Street Railway Company operated the system formerly of the Malden and Melrose Railroad Company as its own. In a suit in equity to compel the West End Street Railway Company to pay judgments rendered against the Malden and Melrose Railroad Company before 1887, of which the West End Street Railway Company was ignorant at the time of the purchase, it was *held,* that fair inferences from the above facts were that the terms and conditions of the purchase by the West End Street Railway Company were duly approved by the directors and by a majority of the stockholders of each of the corporations and by the railroad commissioners, as required by St. 1887, c. 413, § 1; or at any rate that the West End Street Railway Company was estopped to deny that such were the facts, and therefore that, since under those circumstances by force of § 1 the West End Street Railway Company became subject to the liabilities of the Malden and Melrose Railroad Company, the suit might be maintained.

The owner of a judgment recovered before the enactment of St. 1887, c. 413, with regard to the purchasing by the West End Street Railway Company of the stock, property and assets of other street railway companies and consolidating with them, against a street railway company, whose entire capital stock, property and assets the West End Street Railway Company purchased in accordance with the statute, has a claim under § 1 of the statute against that company irrespective of whether the company knew at the time of its purchase of the existence of the judgment or not, and can maintain a suit in equity against both companies to enforce payment of the judgment by the West End Street Railway Company.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 29, 1890, and afterwards amended, seeking to compel the defendant West End Street Railway Company to pay judgments against its alleged predecessor, the defendant Malden and Melrose Railroad Company.

The material portions of the tenth paragraph of the amended bill, referred to in the opinion, were as follows :

"The plaintiff therefore says that the West End Street Railway Company will, in view of all the premises aforesaid, be assumed to have consolidated, in law as well as in fact, with the Malden and Melrose Railroad Company, either directly and by virtue of said act of 1887 or indirectly through the consolidation with the Boston Consolidated Street Railroad Company, and that, in either event, the West End Street Railway Company has, by the provisions and effect of said statutes, rendered itself liable for the debts of the Malden and Melrose Railroad

Company, and, among the rest, to the judgments and claims due to the plaintiff in this suit, which the West End Street Railway Company is therefore bound to assume and pay. That the West End Street Railway Company is now openly and publicly dealing with the property, rights, and locations of the Malden and Melrose Railroad Company as the property of the West End Company, and is expending a large sum of money upon said property, rights, and locations, and is deriving a large and ever increasing income therefrom, and is for every purpose and in every way using and enjoying the Malden and Melrose Railroad in the same manner and as fully as if it had directly consolidated with that company in the manner provided by said statute of 1887, and therefore, and in view of all the premises aforesaid, the West End Street Railway Company is estopped to deny that it has consolidated with said Malden and Melrose Railroad Company, directly or indirectly, as aforesaid, so as to have become directly liable for its debts and obligations, and, among the rest, the judgments and claims of the plaintiff."

The case was referred to John Chipman Gray, Esquire, as master, and, after a hearing on certain exceptions to a report filed by him, was recommitted to him, and he thereupon filed a supplemental report. Material portions of the reports were as follows :

" 1. The plaintiff is the assignee of four judgments against the Malden and Melrose Railroad Company, amounting to $20,195.25, which sum, with interest from November 1, 1880, is now due to him from said company. . . .

"4. On March 31, 1862, by agreement under seal between the said company and the Middlesex Railroad Company, . . . the former purported to transfer to the latter, absolutely and in fee, all its property, real and personal (except its roadbed and franchises), and its rights under contract with other street railroad companies, and granted to it for forty-two years ' the exclusive right to use, occupy, run over, operate and control its road or track.'

" 5. The Middlesex Company was, by St. of 1886, c. 229, consolidated with the Highland Street Railway Company, under the name of the Boston Consolidated Street Railway Company,

and was itself dissolved as a separate corporation; and by St. of 1887, c. 413, the Boston Consolidated Street Railway Company was consolidated with the West End Street Railway Company, and was itself dissolved as a separate corporation. . . .

"11. The Middlesex Railroad Company took possession of the road of the Malden and Melrose Railroad Company and of the roads of the other said companies, and of the equipment and lands (other than roadbeds) of the Malden and Melrose Railroad Company, and paid to the latter company full value for said equipment and lands. . . .

" 17. I find that the Middlesex Railroad Company operated the Malden and Melrose road as part of its own system; that it kept no separate account of the earnings received from the use of the Malden and Melrose Railroad Company; that the failure to keep such separate account does not appear to have been from a fraudulent motive; and that it would have been extremely difficult, if not impossible, to keep such separate account.

" 18. The Middlesex Railroad Company, for many years both before and after 1874, in its returns to the railroad commissioners stated that it operated the Malden and Melrose Railroad, and also the short pieces of the Medford and Charlestown Railroad and of the Somerville Horse Railroad mentioned above. . . .

[Paragraphs twenty-two, twenty-three and twenty-four are stated in the opinion.] . . .

" 25. The plaintiff has proceeded in this bill in equity against the Malden and Melrose Railroad Company, whose alleged creditor he seeks to garnishee; he cannot in the same bill claim that it has lost its identity by consolidation.

" 26. The claim of the plaintiff against the Malden and Melrose Railroad Company is a legal demand; if there had been a consolidation, the claim against the West End Street Railway Company would be a legal demand for which the plaintiff has a full, adequate, and complete remedy at law.

" 27. I find, therefore, that the bill should be dismissed against both defendants, but that the dismissal against the Malden and Melrose Railroad Company should be without prejudice. . . .

" 43. I have made findings of law which I am aware are not within the proper functions of a master, but I have done so at the request of the counsel of both parties. . . ."

Exceptions to the original report were filed by the plaintiff, most of which are described in the opinion. The exception to the twenty-sixth paragraph of the report, referred to in the opinion, was as follows:

" The plaintiff excepts to the master's ruling in paragraph 26 of his report as inconsistent with the contention made by the plaintiff in his argument before the master, that the West End Company, irrespective of any liability it may be under to the Melrose Company, is directly responsible to the plaintiff as a creditor of the Melrose Company, by reason of the fact that the West End Company has taken possession of all the assets of the Melrose Company and is therefore chargeable in equity with an obligation to apply such assets to the payment of the plaintiff's claim ; and the plaintiff excepts on the ground that the master has refused to rule in accordance with such contention of the plaintiff."

Other facts are stated in the opinion.

The case was heard by *Hammond,* J., upon exceptions to the reports of the master, and by him reported to the full court, "for the determination of the question what disposition should be made of the exceptions taken by the complainant to the twenty-fourth, twenty-fifth, and twenty-sixth findings of the master in his original report, and of the tenth exception of the respondents to the master's report on the recommittal ; such order to be entered as, in the opinion of the Supreme Judicial Court for the Commonwealth, law and justice require."

*H. L. Harding & J. B. Warner,* (*R. S. Warner* with them,) for the plaintiff.

*T. Hunt,* for the defendants.

KNOWLTON, C. J.    This report brings before us questions founded on the plaintiff's exceptions to the twenty-fourth, twenty-fifth and twenty-sixth findings of the master in his original report, in connection with the pleadings and other facts in the case. The plaintiff contends that the defendant, the West End Street Railway Company, hereinafter called the West End Company, has become liable to pay the judgments held by the plaintiff against the Malden and Melrose Street Railroad Company, hereinafter called the Malden and Melrose Company, because of an alleged union and merger of these two

corporations.   The findings of the master on this point are as follows :

" 22.  One other claim was made by the plaintiff, namely, that the Malden and Melrose Railroad Company had been consolidated with the West End Street Railway Company, and that therefore the latter is liable for the debts of the former.   The West End Street Railway Company conceded that, if there had been such consolidation, it would be liable for such debts ; but it denied that there was such a consolidation.

" 23.  I find that the stock in the Malden and Melrose Railroad Company was gradually acquired by the Middlesex Railroad Company and its successors ; that, after the agreement of 1862, the former company took no corporate action except for the choice of officers ; that the officers of both companies, in their reports to the railroad commissioners for many years after 1862, stated that the former company was being operated by the latter company, under the terms of said agreement ; that for many years prior to the consolidation of the Middlesex Railroad Company and the Highland Street Railway Company, in 1886, the president of the Middlesex Railroad Company had owned more than a majority of the stock of the Malden and Melrose Railroad Company, which he had acquired since the lease of 1862 ; that after the formation of the West End Street Railway Company, he transferred all of this stock to Henry M. Whitney, the president of the West End Street Railway Company, and the stock was then transferred to the said West End Street Railway Company, which reimbursed Mr. Whitney for the amount paid by him ; that after this transfer to the West End Street Railway Company the treasurer of that company reported to the railroad commissioners that they ' owned the stock and property of the Malden and Melrose Company, — all of it — and would like to have the Malden and Melrose Company report omitted ' ; that the railroad commissioners struck the Malden and Melrose Company from their lists, and reported as follows : ' The Malden and Melrose, having been merged in the West End by the purchase of all its capital stock and assets,' etc.

" 24.  I find that there was no such consolidation as the plaintiff alleges.   It was admitted by the plaintiff that the statutory requirements for the consolidation had not been complied with.

The taking possession of the property of one corporation by another, the buying of the stock of the former by the latter, or the entire disregard of the rights of the former by the latter, as alleged, would not constitute a consolidation, making the latter directly liable for the debts of the former." He also finds that all the property of the Malden and Melrose Company, and all rights and benefits from the use of it that have come to the West End Company, so far as it is practicable to discover and separate them, except those from the use of the property since 1887, have been paid for at more than their full value.

It is very plain that, in the absence of a statutory provision on the subject, the acquisition of all the stock, property and assets of a corporation, by an individual or by another corporation, does not of itself make the new holder liable to pay the debts of the corporation. A mere purchase of such capital stock and assets is a taking of a title, which leaves unsecured creditors with no claim against the purchaser, and with no means of collecting their debts except from the corporation itself. *Shaw* v. *Norfolk County Railroad*, 16 Gray, 407. *Ewing* v. *Composite Brake Shoe Co.* 169 Mass. 72. In the present case there is no ground for a claim of direct liability of the West End Company to the plaintiff upon these judgments, outside of the St. 1887, c. 413, which provides for a consolidation and union of the West End Company with any or all of the other street railway companies authorized to run cars in or into the city of Boston, and for such a consolidation and union of each of these other street railway companies with the West End Company, or any other of said companies, and for the purchase and holding of the whole or any part of the property, rights and franchises of any or all of these companies by any of the others. It becomes necessary to consider this statute, to see whether a liability for these judgments has been created under it.

It provides in § 1, that, "In every case of consolidation as aforesaid, the corporations uniting shall constitute a new corporation under such name as shall be agreed upon in the manner and at the meetings aforesaid; but the calling of the first meeting of said new corporation . . . shall be provided for in its articles of consolidation," etc. This shows that, in case of a union by consolidation, a new corporation is formed.

There may be a purchase and holding of " the whole or any part of the property, rights and franchises of any or all of " these corporations. " In every case of purchase by one corporation of the entire property, rights and franchises of another or others, as aforesaid, the corporation purchasing shall have, hold, possess, exercise and enjoy all the locations, powers, privileges, rights, franchises, property and assets which, at the time of such purchase, shall be had, held, possessed or enjoyed by the corporation or corporations selling, or either or any of them, and shall be subject to all the duties, restrictions and liabilities to which they, or either, or any of them shall be subject." This is another and different provision, whereby one of these corporations may acquire all the rights and become subject to all the liabilities of another corporation without any formal and technical consolidation of the two. By mere purchase, all the rights and franchises pass with its property from one corporation to the other, and, if the selling corporation survives in name, it has no powers, or franchises, or anything else of value. It is, therefore, a union and virtual consolidation, although it is not the statutory consolidation mentioned in the section. In § 2 there is a provision for reaching the same result by issuing preferred shares of stock of the West End Company and delivering them in exchange for shares of one of these other corporations on terms agreed upon, and depositing the shares received from the other corporation with a trust company in Boston, until all the shares of the other company have been received, and then cancelling them. In this case, as in the last, the West End Company acquires all locations, rights, powers, privileges and franchises of the other company, and becomes subject to all its duties, restrictions and liabilities. By either of these three methods the new consolidated company, or the purchasing company, or the West End Street Railway Company after delivering its stock, stands in the place of the company whose property and franchises have been acquired.

In § 1 is this provision: " But such leases, purchases, sales and consolidations shall be only upon such terms and conditions as shall be agreed upon in the first instance by the directors and then by a majority in interest of the stockholders of each cor-

poration called for that purpose and approved by the board of railroad commissioners."

The second section is inapplicable to this case, for the stock of the Malden and Melrose Company was not acquired by giving shares of the preferred stock of the West End Company in exchange for it. The master has found that there was no consolidation, that is, that there was no formation of a new corporation under the statute. But he has also found that the West End Company reported to the railroad commissioners that it " owned the stock and property of the Malden and Melrose Company — all of it — and would like to have the Malden and Melrose report omitted." Here is an admission of the company, made many years ago, which shows that the condition is such as that referred to in § 1 of this statute, when the entire property, rights and franchises of one of these corporations has been acquired by another of them. The admission does not state in terms that the mode of acquisition was exactly that prescribed in the statute. The required approval by the railroad commissioners of the terms and conditions upon which this result was reached is found, by implication, in their report, in which they struck the Malden and Melrose Company from their lists, with this explanation : " The Malden and Melrose having been merged in the West End by the purchase of all its capital stock and assets," etc. Since then, this corporation, with all that pertained to it, has been treated by the railroad commissioners as belonging to the West End Company. The latter corporation, for more than twenty years, has treated the property formerly of the Malden and Melrose Company as its own, has acquired new locations in its own name, in place of other locations originally granted to the Malden and Melrose Company, while most of these locations originally so granted have been revoked, some of them on the petition of the West End Company. The Malden and Melrose Company has known of this admission, and of all that has been done by the other company in reference to its property and interests, and seemingly has acquiesced in it.

The most difficult question in the case is whether the acquisition of the entire property, rights and franchises of the Malden and Melrose Company by the other defendant is to be deemed a purchase, upon terms and conditions agreed upon in the first in-

stance by the directors and then by a majority in interest at a meeting of the stockholders of each corporation held for the purpose.   As we have said, the approval of the railroad commissioners sufficiently appears.   There is no reported evidence or finding bearing directly upon the way in which the business was accomplished.   It is found that the stock of the Malden and Melrose Company, which was held at the time by the president of the Middlesex Railroad Company and afterwards by the president of the West End Company, was transferred to the latter corporation and paid for by it.   This purchase seems to have covered most of the capital stock of the company. How or when other stock or property was procured does not appear.

It is fair to infer that this business was done lawfully, by an agreement of the directors of the two companies, and was confirmed by corporate action.   Indeed, the only way in which it could be legally done was under this statute, and in accordance with its terms.   Apart from this statute, the West End Company had no right to buy and hold the stock of another street railway company.   Pub. Sts. c. 113, § 18.   As it could not become the owner of the " stock and property of the Malden and Melrose Company — all of it," except by a purchase of the kind stated in the statute, it is not to be assumed, from a mere failure to present evidence of the particulars of the action, that the acquisition of this stock and property was unlawful, and that all the action of the West End Company for more than twenty years in reference to the property has been contrary to law. There is a similar and perhaps stronger inference to be drawn from the action of the railroad commissioners.   As an official board, supervising the conduct of all the street railway companies in the Commonwealth, it knew the law applicable to such companies, and it became satisfied that the West End Company had lawfully acquired all the stock and property of the Malden and Melrose Company.   Presumably, this was upon a presentation of evidence that this property had been purchased under the St. 1887, c. 413, upon terms and conditions agreed upon by the directors of each of the two companies and afterwards by a majority of the stockholders of each company, at meetings called for the purpose.   In the absence of evidence to the contrary, there

is always a presumption that the action of such a corporation is lawful, and still more is there such a presumption in regard to the official action of a board of public officers.

There is nothing in the statute to indicate that such a purchase might not lawfully include the buying of the stock of the corporation whose franchises and property are to be acquired. Indeed, under the second section the union and transfer are accomplished entirely by an acquisition of stock through an exchange of preferred shares of the West End Company for the stock of the other company. It was the purpose of the Legislature that, upon the giving up of its property and franchises in either of the three ways, whether by an exchange of shares under § 2, or by a formal consolidation under § 1, or by a sale and purchase of the entire property, rights and franchises under § 1, the creditors of the selling or consolidated corporations should be protected by obtaining a substituted liability of the new consolidated company, or of the purchasing company. In the present case the West End Company evidently sought to acquire by purchase all the property and valuable rights and interests of the Malden and Melrose Company. It did that which its officers deemed necessary to obtain these under the statute. For more than twenty years it has held and used all the franchises and property of the other corporation as its own. It intended to put itself in a position to have all the advantages which the statute permitted it to obtain, by a purchase in the manner prescribed. That it was ignorant of the existence of these judgments against the Malden and Melrose Company, which had been recovered many years before and which were afterwards renewed by suits, is immaterial to the rights of this plaintiff. These rights are protected by the statute which says that a corporation acquiring such property and franchises of another corporation shall be subject to its liabilities. Having availed itself of the privileges conferred by the statute, this defendant cannot complain because it is held to the accompanying liabilities. Nor should it object to the drawing of inferences from its declarations and public acts, on which the legality of its corporate conduct in reference to the other corporation depend. Nothing less than strong proof of the negative would justify a conclusion that these two corpora-

tions and their officers failed to heed the requirements of the statute in this important matter.

We understand the master's finding of an admission "by the plaintiff that the statutory requirements for the consolidation had not been complied with" to mean an admission that the requirements for the statutory consolidation mentioned in § 1 had not been complied with, and not an admission that there had not been a union, or a virtual consolidation through the complete ownership of one corporation by the other, obtained in a lawful way.

The master also found that "after the agreement of 1862 the former company (the Malden and Melrose Company) took no corporate action except for the choice of officers." We are not certain whether this is intended to cover the period after the enactment of the St. 1887, c. 413; but if it is so intended, it does not indicate that the directors did not agree to the terms and conditions of a purchase by the West End Company which should give complete ownership and control of the entire property, rights and franchises of the corporation. It is found that the officers of the corporation made reports to the railroad commissioners for many years after 1862, and presumably they took other action as officers.

If the finding means that this company never agreed to the purchase by the West End Company at a meeting of the stockholders called for the purpose, we are inclined to hold that this provision of the statute is for the protection of the stockholders, and when the purchaser of all the property and capital stock of the company has for more than twenty years treated this as a valid purchase, and acted upon it, with its acquiescence, that the corporation cannot now set up its non-compliance with this provision against the validity of the change of ownership. Especially should this be so held when the corporation and its managers, in pursuance of the arrangement, have permitted the use of its property to be enjoyed by the purchasing corporation, and its earnings to be so mingled with the earnings of the purchasing company that it is impossible to follow them. The effect of this conduct of the managing officers of both corporations, and of the corporations themselves, has been to put the earnings of the Malden and Melrose Company beyond the reach of creditors,

through the union of the two corporations.     Both corporations should now be estopped to deny that the statutory requirements were complied with and that there was a complete union by purchase, such as was contemplated by the statute.     There has been a virtual merger of the two corporations, acquiesced in for a long time by everybody interested.     It has often been held that non-compliance with similar statutory provisions, made for the benefit of a corporation, cannot be set up against third persons, when those for whose protection they were intended have acquired advantages through action in disregard of them.     *Chicago, Santa Fe & California Railroad* v. *Ashling,* 160 Ill. 373.     *Chicago & Joliet Electric Railroad* v. *Ferguson,* 106 Ill. App. 356. *Williamson* v. *New Jersey Southern Railroad,* 11 C. E. Green, 398.     *St. Louis, Vandalia & Terre Haute Railroad* v. *Terre Haute & Indianapolis Railroad,* 145 U. S. 393.     *Phinizy* v. *Augusta & Knoxville Railroad,* 62 Fed. Rep. 678.     See *Hatch* v. *Hawkes,* 126 Mass. 177; *Spaulding* v. *Arlington,* 126 Mass. 492, 494; *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365, 377.     We are of opinion that both corporations have been so conducted, in reference to the ownership of the Malden and Melrose Company and of its property, rights, and franchises, especially in reference to the income from the use of its property, that, as against creditors of that company who are left with nothing from which to satisfy their debts, they are estopped to deny the regularity of their proceedings and the completeness of a union by purchase, such as the statute refers to. It follows that the West End Company became subject to the liabilities of the other defendant, including the liability now represented by the plaintiff's judgments.

The statement in the tenth paragraph of the bill is broad enough to include a union of the West End Company with the Malden and Melrose Company by the purchase of its entire property, rights and franchises, and therefore an assumption of its liabilities under this statute, and a consolidation in fact, although there was not a formal and technical consolidation by the creation of a new corporation.     The exception to the twenty-fourth finding of the master is therefore sustained, not because of the statement that there was no technical consolidation, within the meaning of the word as used in the statute, but because

the finding seems to include a union and consolidation in fact, through a purchase of the entire property, rights and franchises of the other corporation, in such a way as to make it subject to the liabilities of that corporation, under the statute.

The twenty-fifth finding is not fatal to the plaintiff's claim to recover for a direct liability of the West End Company under the statute.   So far as it purports to conclude that, upon the facts, either with or without an amendment, the bill cannot be maintained, the plaintiff's exception to it is sustained.

The exception to the twenty-sixth finding is overruled.   The grounds of objection on which the exception is founded are not applicable.   The mere fact that the West End Company has taken possession of all the assets of the Malden and Melrose Company does not create a liability to the plaintiff.   If creditors might follow the assets in equity, this finding has no relation to that subject.   Whether the legal proposition stated in this finding can be availed of by the defendant at this stage of the case is a question which is not definitely presented by the report of the single justice.   We treat it as a question of law that can be considered apart from the exception.

In reference to the questions intended to be presented by the report of the single justice, we are of opinion that the tenth exception of the defendants to the master's report on recommittal does not require consideration.*   We overrule it as immaterial in the present aspect of the case, without prejudice to the right of the respondents to have it considered further if it becomes important hereafter.

*Exceptions to the twenty-fourth and twenty-fifth findings sustained; case to stand for further hearing.*

---

* This exception was "to the failure of the master to find that in February, 1870, the Middlesex Railroad Company had acquired from the Suburban Railroad Company (formerly the Cliftondale Railroad Company) the right to enter upon and use the tracks of the Malden and Melrose Railroad Company in such mode as might be agreed upon."