## KEENAN v. ZEMAITIS et al.

(District Court, D. Massachusetts. March 12, 1925.)

No. 1998.

1. **Corporations ⟨key⟩415—Directors of Massachusetts corporation have power to mortgage part of its assets.**

Under the law of Massachusetts (G. L. Mass. c. 156, §§ 25, 42), the board of directors of a business corporation has power, in the absence of a by-law limiting its authority, to mortgage a part of its property for a purpose consistent with the carrying on of its business.

2. **Corporations ⟨key⟩415—Note and mortgage held obligations of corporation.**

A note and mortgage executed pursuant to a vote of the directors of a corporation, by the person designated by such vote and for which the corporation received full consideration, which was used in its business with the knowledge of its officers, *held* the obligations of the corporation.

3. **Corporations ⟨key⟩477(3)—Mortgage executed by person designated by directors held valid.**

Though the by-laws of a corporation provide that notes and mortgages shall be executed by the president and treasurer, such provision does not limit the power of the directors to authorize a mortgage and in the vote to designate who shall sign the necessary documents on behalf of the corporation.

4. **Bankruptcy ⟨key⟩205—Trustee held not entitled to take advantage of technical irregularities in execution of mortgage.**

A trustee in bankruptcy of a corporation cannot take advantage of irregularities in the execution of a mortgage by it, especially where the mortgagee advanced the money in good faith without knowledge of such irregularity.

In Equity. Suit by Wilfred B. Keenan, trustee in bankruptcy of the Progress Shoe Manufacturing Company, Inc., against George J. Zemaitis and others. Decree for defendants.

Everts, Berenson, Keenan & Aldridge, and John J. Cummings, all of Boston, Mass., for plaintiff.

F. J. Bagocius, of Boston, Mass., for defendant Brockton Standard Shoe Co. and defendant Geguzis.

Charles G. Willard, of Brockton, Mass., for defendant Zemaitis.

BREWSTER, District Judge. The Progress Shoe Manufacturing Company, Inc., was adjudicated bankrupt on the 28th day of March, 1922. The plaintiff is its duly appointed trustee in bankruptcy. Among the assets which came into his hands was certain real estate situated in Brockton, which constituted the manufacturing plant of the bankrupt. This real estate was subject to a second mortgage held by the defendant Zemaitis to secure the principal sum of $9,000, being the balance due on a note dated November 27, 1920, for $10,000, given by the bankrupt to Zemaitis. The holder of a third mortgage foreclosed, and the defendant Brockton Standard Shoe Company became the owner of the property and is now the holder of the record title, subject to the lien of the mortgage of defendant Zemaitis. The plaintiff brings this bill in equity to compel the defendant Zemaitis to deliver up for cancellation the note and the mortgage given to secure the same.

There may be serious question whether this plaintiff has any standing in court to attack this mortgage, having allowed all the bankrupt's interest in the mortgaged property to slip away from him; but the defendant Brockton Standard Shoe Company has agreed to pay to the plaintiff the amount due on the mortgage note, both principal and interest, if the mortgage is declared invalid.

Assuming, therefore, without deciding, that the plaintiff may properly ask this court to inquire into and determine the validity of the mortgage to Zemaitis, I received evidence which warrants the following findings of fact:

The bankrupt was a Massachusetts corporation, engaged in the business of manufacturing shoes. It had its principal place of business in Brockton, where its manufacturing plant was located. It also owned stores in Boston, Mass., and Brooklyn, N. Y. In October, 1920, the bankrupt was very much in need of funds with which to meet its obligations, and was experiencing difficulty in obtaining these funds. I am unable to determine whether the corporation was

then insolvent, within the meaning of the Bankruptcy Act (Comp. St. §§ 9585–9656).

Among the customers of the bankrupt was the defendant Zemaitis. At the solicitation of officers of the company, he came to Brockton on October 19, 1920, and at a conference at which the president, treasurer, and several directors were present the defendant was asked to loan the corporation $5,000. Thereafter, before the 29th day of October, the defendant agreed to loan $5,000 upon the security of mortgages covering the two stores in Brooklyn and Boston. On November 2, 1920, a Mr. Chizauskas, who was held out by the corporation as its vice president, went to Waterbury, where Zemaitis had his place of business, and had a talk with that defendant about increasing the loan to $10,000, and represented to him that, if Zemaitis would pay $5,000 then and $5,000 more upon receipt of note and mortgage, the corporation would give to Zemaitis a note for $10,000, payable $2,000 January 1, 1921, and the balance July 1, 1921, and would give as security therefor a second mortgage on its plant in Brockton. On the following day, to wit, November 3, 1920, Zemaitis paid to the bankrupt $5,000.

On November 16, 1920, there was a meeting of the board of directors, attended by six directors, including Chizauskas. At this meeting it was voted to place a second mortgage on the real estate for the sum of $10,000, and to authorize Mr. Chizauskas, as vice president and director, to execute the mortgage. Again, on November 23, 1920, the same directors voted to accept a loan from Zemaitis of $10,000 on second mortgage, $2,000 to be payable January 1, 1921, and to pay 7 per cent. on $5,000 up to date, and 7½ per cent. on $10,000 to January 1, 1921.

On November 27, 1920, the bankrupt corporation executed the note and mortgage in question, both the note and the mortgage being signed on behalf of the corporation by Alexander Chizauskas. Attached to the mortgage was a paper purporting to be a copy of a vote passed at the special meeting of the directors held November 24, 1920. The vote read as follows:

"Upon motion duly made and seconded it was voted as follows: That Alexander Chizauskas, the vice president and one of the directors of the Progress Shoe Manufacturing Company, is hereby authorized and instructed to execute, acknowledge, and deliver in the name and behalf of the said Progress Shoe Manufacturing Company, a second mortgage and note, in the sum of ten thousand (10,000) dollars with interest at the rate of 7½ per cent. per annum, to George J. Zemaitis, of Waterbury, Conn. Said mortgage is to cover property located on Spark street in said Brockton, and is the same on which a mortgage running to one Emil E. Keller and now outstanding was placed in October, 1919.

"A true copy:

"Attest: Vincent B. Ambrozaitis, Clerk."

The note and mortgage, with certified copy of the vote, were forwarded by mail to Mr. Zemaitis, who thereupon, in accordance with his earlier agreements with the company, sent to the bankrupt two checks, aggregating $5,000, which were used by it. The records of the corporation do not disclose any directors' meeting of November 24, or any vote which, in form, corresponds with the vote attached to the mortgage, but votes passed by the directors at the meetings held November 16 and November 23 embody the substance of the certified vote.

Nor does it appear from these records just what notice was given to directors of either of these meetings, but I do find in the record of the meeting of November 16 that the clerk was directed to send by registered mail notice of a special meeting to be held in November, 1920. In the absence of any evidence to the contrary, the presumption of regularity would justify me in finding as a fact that sufficient notice of this meeting was given. The by-laws provide for regular monthly meetings without notice, and for special meetings on one day's notice by the president or any two directors, but are silent as to the manner in which such notice shall be given. I find, therefore, on all the evidence, that the meetings of November 16 and 23 were duly called and held.

The by-laws further provide that the board of directors shall have the general management of the business of the corporation, and may exercise all powers and do all things by statute or by-laws not required to be exercised or done by the stockholders, and that all mortgages shall be signed by the president and treasurer, and that the treasurer should issue and sign all notes of the corporation, which shall be countersigned by the president. The by-laws do not provide for the office of vice president, and it does not appear that Alexander Chizauskas was ever duly elected vice president, but he is frequently referred to in the records as "acting vice president," and, as a fact, he was held out by the corporation as one entitled to represent it in the same capacity as if he had been a duly constituted vice presi-

dent. He appears to have been more active in the management of the affairs of the corporation than the president, who was a practicing attorney and during this period was away a good part of the time.

Vincent B. Ambrozaitis, who signed the attested copy of the vote annexed to the mortgage, was chosen by the directors to act as clerk for the meetings in question, but it does not appear that he took the oath required by law. He testified before me, and under oath stated that the records of these two meetings were true records of the corporation.

Zemaitis was a stockholder of the corporation, but was not familiar with the by-laws, and had no knowledge respecting those provisions of the by-laws relating to the duties of the president and treasurer with reference to the signing of notes and mortgages, nor did he have any knowledge of the irregularities, if there were any, in connection with the meetings of the directors or the election of the clerk. He relied entirely upon the certified copy of the vote, and had no reason to believe that it did not fully and accurately set forth the facts respecting the authorization of the mortgage. Zemaitis took the note and mortgage in good faith, paid the consideration for it which he agreed to pay, and was without knowledge of any of the failures on the part of the corporation to comply with the terms of the by-laws of the corporation. The corporation received the $10,000 paid by Zemaitis and used it in paying its pressing obligations.

The grounds upon which the plaintiff seeks to have these transactions invalidated for the benefit of other creditors of the bankrupt estate are principally these:

(1) That the mortgage was not authorized or ratified by vote of the stockholders.

(2) That the mortgage was not authorized by the board of directors at a meeting legally called and held.

(3) That the note and mortgage were not signed and executed by the proper officials of the company.

[1] 1. It is clear that the stockholders never authorized the giving of this mortgage at any meeting duly held for that purpose. The first question is whether such stockholders' vote was necessary to the validity of the mortgage. The laws of Massachusetts (G. L. c. 156, § 25) confer upon the board of directors all the powers of the corporation, except those conferred by law or by-laws on the stockholders. There was nothing in the by-laws of the corporation

limiting the powers of the directors to mortgage its property, and if such authority is wanting it is because of the provisions of section 42 of said chapter 156, which provides for the sale, lease, or exchange of all the property and assets of the corporation by vote of two-thirds of each class of stock outstanding and entitled to vote. In Commerce Trust Company v. Chandler et al. (C. C. A.) 284 F. 737, this section was held to increase the rights of stockholders with regard to a sale, lease, or exchange of all the assets of the corporation; but the court in that case was careful to limit its decision to the question of the validity of a mortgage of all the assets. Judge Anderson, in his opinion, points out that "the record does not involve, and we intimate no opinion on, the question as to whether the directors of a Massachusetts business corporation may, without a vote of two-thirds of the stockholders as required under section 40 [chapter 437, Acts of 1903, now G. L. c. 156, § 42], mortgage less than all of the property of the corporation." It follows, therefore, that Commerce Trust Company v. Chandler et al., supra, is not decisive of the question here presented, because the mortgage to Zemaitis embraced only a portion of the property of the corporation.

One of the reasons advanced for denying to directors the power to mortgage all the property and assets of the corporation is that the directors are elected to carry on the business of the corporation, and that to secure a demand note by a conveyance of all its assets, with power of sale in case of default, amounts to a final disposition of all the property and rights of the corporation. That situation is distinguishable from the one at bar. Here the directors were charged with the management of the business of manufacturing and selling shoes. They were, in furtherance of that purpose, endeavoring to borrow for a short period of time $10,000 to enable the company to go on, and the directors, in good faith, expected that the loan would be shortly repaid. As security for this loan, until it was paid, it offered a second mortgage on a portion of its assets. This is not a mortgage of all its property with power of sale, which power, if exercised, would wipe out the corporation as a going concern.

I do not find any decision in the courts of the commonwealth of Massachusetts which support the proposition that a board of directors of a Massachusetts corporation, in the absence of a by-law limiting its authority, may not mortgage a portion of the

assets of the corporation, and I have reached the conclusion, therefore, that the board of directors of the bankrupt corporation did possess such power. See Thompson on Corporations, § 2560; 3 Cook on Corporations, § 808.

[2] 2. I rule as a matter of law, upon the facts above recited, that the board of directors duly authorized the note and mortgage, and authorized Chizauskas, as its vice president, to execute the mortgage. The terms of the mortgage are in substantial conformity with those recited in the votes of the directors, and it was executed by the member of the board of directors who was designated to sign on behalf of the corporation. I rule that the note became the obligation of the corporation, and the mortgage given to secure it was the act of the corporation.

All the officers of the corporation, active in the management of its affairs, had knowledge that the corporation received $10,000 from Zemaitis, and that this sum was advanced on the security of assets of the corporation, and there is nothing to indicate that they did not fully acquiesce in the transaction. There is no evidence of any objection being made until long after bankruptcy had intervened. Commissioner of Banks v. Weisberg (Mass.) 143 N. E. 910 (decided May 23, 1924); Whiting v. Malden, etc., R. R., 202 Mass. 298, 88 N. E. 907, 132 Am. St. Rep. 493; McKee v. Title Ins. Co., 159 Cal. 206, 113 P. 140.

[3, 4] 3. While the by-laws, in prescribing the duties of the president and treasurer, designated these officers as the ones to sign notes and mortgages, I do not think these provisions operate to limit the powers of the directors to authorize a mortgage, and in the vote of authorization to designate who, on behalf of the corporation, should sign the necessary documents. Furthermore, there would seem to be abundant authority for the proposition that a trustee in bankruptcy could not take advantage of these infirmities, if they should be held to constitute such. Galbraith v. First National Bank of Alexandria, 221 F. 386, 137 C. C. A. 194; In re V. & M. Lumber Co., Inc. (D. C.) 182 F. 231; Westerlund v. Black Bear Mining Co., 203 F. 599, 121 C. C. A. 627; 3 Cook on Corporations, § 808. Especially in view of my finding to the effect that the mortgagee was not aware of these requirements of the by-laws. See Flint v. Pierce, 99 Mass. 68; Hartford v. Massachusetts Bowling Alleys, Inc., 229 Mass. 30, 118 N. E. 188; Boston

Food Products Co. v. Wilson & Co., 245 Mass. 550, at 561, 139 N. E. 637.

The plaintiff has filed numerous requests for findings of fact and also 19 requests for "findings of law," which I take to mean "rulings of law." Nearly all of the requests for findings have been substantially covered by the foregoing. So far as they are not covered, the requests for findings are denied, and so far as the requests for rulings of law are inconsistent with this opinion they are denied.

The plaintiff's bill should be dismissed, with costs, and a decree to that effect may be entered in these proceedings.