IMBERIOL MORONI & others *vs.* JAMES BRAWDERS & others.

Essex.    March 6, 7, 1944. — September 14, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Voluntary Association. Labor and Labor Union. Evidence,* Presumptions and burden of proof, Inference.

A finding in a suit in equity that a merger of two unincorporated labor organizations was lawfully adopted by a two-thirds vote of one of them as required by its constitution was not plainly wrong, although no record was introduced in evidence to show a two-thirds vote, where the regularity of the merger was not questioned for four years and the only evidence of lack of a two-thirds vote was testimony of three witnesses who did not testify that such a vote was not obtained, but testified at most that they were not convinced or did not recollect that such was the fact, and it appeared that two of them were members of a national executive board of one of the organizations and the third was its advising attorney and that they all knew of the requirement of the two-thirds vote and joined in reports to conventions of their national organization stating that the merger had been "carried" and "approved": an inference of regularity of the proceedings and of propriety of the conduct of the officers was warranted.

BILL IN EQUITY, filed in the Superior Court on August 14, 1943.

The suit was heard by *Goldberg,* J.

*J. B. Harrington,* (*F. P. Garland* with him,) for the defendants.

*S. S. Grant,* (*H. B. Roitman* with him,) for the plaintiffs.

LUMMUS, J.    This bill in equity was brought on August 14, 1943, by the business agent and two other members of

Local Number 21 (hereinafter called the Local), located at Peabody, of the International Fur and Leather Workers Union of the United States and Canada (hereinafter called the International), a voluntary unincorporated labor union affiliated with the Congress of Industrial Organizations, commonly known as the C. I. O. The plaintiffs sued with the authority and approval of the president of the International. The purpose of the bill was to obtain the records and funds of the Local, and to restrain the defendants from interfering with them.

The defendants by a counterclaim alleged that the Local was organized as a local of another voluntary unincorporated labor union called the National Leather Workers Association (hereinafter called the Association); that a purported merger of that Association in 1939 with still another such labor union called International Fur Workers Union of the United States and Canada C. I. O. (hereinafter called the Union), to form the International, was unlawful and void because of failure to comply with the constitution of the Association; that the Local was therefore not subject to the International and its constitution; and that the plaintiffs have usurped the offices of the Local and the control of its affairs. The counterclaim prayed that the plaintiffs be restrained from interference with the Local.

On November 17, 1943, a final decree was entered, dismissing the counterclaim, and giving relief to the plaintiffs, with costs. The case is here on the appeal of the defendants.

The Local originated in 1933 as a Local of the Association. In 1937 the Association "affiliated" with the C. I. O. The constitution of the Association provided that its national executive board "shall not have the power to amalgamate or affiliate with any body unless a referendum vote has been taken with two-thirds of said vote in favor of such amalgamation or affiliation."

During 1938 there was discussion of a proposed merger of the Association and the Union. Under the direction of the national executive board of the Association a referendum vote was taken on the proposed merger among its locals in Massachusetts and other States in March and

April, 1939, which was completed shortly before the annual
convention of the Association held at Lynn late in April,
1939. A plan of merger had been agreed upon by the na-
tional executive board of the Association and representa-
tives of the Union at a meeting held in New York on March
18, 1939, and the plan had been approved by the general
officers of the C. I. O. on March 21, 1939.

At the annual convention of the Association held in Lynn
late in April, 1939, its national executive board reported
on the result of the referendum. It said that the referen-
dum "was carried by our locals," and that the result showed
"that our membership is in favor of such a merger." The
plan of merger recommended by the national executive
board and adopted by the Association contemplated a new
and substituted organization, the International, divided into
the Leather Workers Division and the Fur Workers Di-
vision, each of which was to have an executive board and
separate annual conventions. But there were to be general
officers for the whole International, and the executive boards
of the two divisions were to constitute the executive board
of the International.

At the 1939 annual convention of the Association at Lynn
measures were taken to put the merger into effect. The
constitution of the Association was transformed into the
constitution of the Leather Workers Division. In short,
the convention began as one of the Association, and ended
as one of the Leather Workers Division. The Association
never functioned afterwards. The Local received a new
charter from the International. All the persons named as
defendants sought and accepted office in the Local as a
Local of the International. Annual conventions of the
Leather Workers Division were held in 1940, 1941 and 1942.
The report to the 1940 convention by the executive board
of the Leather Workers Division contained the following:
"The most important decision of the last convention —
one affecting the very existence and future of the leather
workers union — was the decision of merging our organiza-
tion with the International Fur Workers Union to form
the International Fur & Leather Workers Union of United

States and Canada, affiliated with the Congress of Indus-
trial Organizations. A similar decision was adopted at the
thirteenth biennial convention of the International Fur
Workers Union in May 1939. The merger was approved
by the membership of both organizations."

The passage of the referendum by the necessary two-
thirds vote, and the validity of the merger, were never
questioned by the defendants or any other person, at any
convention or elsewhere, until the summer of 1943.

A new constitution for the International was submitted
to referendum vote early in 1943, in accordance with action
taken at the convention of the Leather Workers Division
in 1942. On April 30, 1943, the Local voted in favor of the
new constitution. It was adopted by "an overwhelming
majority of votes cast" in each division, according to an
announcement to all locals dated May 22, 1943. That
new constitution prescribed causes for which charges might
be made against members and officers, and empowered the
president of the International to suspend any officer against
whom charges were made, pending trial. The vote in the
Local on the adoption of the new constitution was fairly
close, and some controversy resulted. Early in August,
1943, opponents of the new constitution, led by the defend-
ants, began to contend that the new constitution could not
apply to the Local, because the Local had been a Local of
the Association, and the Association had never been merged
into the International by the two-thirds vote required by
the constitution of the Association. A turbulent meeting
of the Local held on August 12, 1943, when talk of secession
was rife, broke up in disorder, after the plaintiff Moroni
spoke, the majority adhering to the International remaining
in the hall to continue the meeting under the chairman-
ship of an executive board member named O'Keefe, while
a strong minority, including the vice-president of the Local
and the other defendants, left the hall. The president of
the Local, the defendant Brawders, was absent. Charges
were filed against various defendants as officers, and the
president of the International suspended them pending
trial, under authority contained in the new constitution.

The defendants tried to take possession of the records and funds of the Local. This suit followed on August 14, 1943.

We pass by questions that might arise, even though the merger were not adopted by a two-thirds vote, as to the effect of long acquiescence by the defendants, and all others interested, in precluding a belated attempt to unscramble. the International and revive the Association. *Walworth* v. *Brackett,* 98 Mass. 98. *Putnam* v. *Langley,* 133 Mass. 204. *Goulding* v. *Standish,* 182 Mass. 401. *Pevey* v. *Aylward,* 205 Mass. 102, 107. *Bancroft* v. *Cook,* 264 Mass. 343.

The judge found as a fact that the referendum vote taken in 1939 in favor of the merger "was carried by more than a two-thirds vote." The contentions of the defendants all depend upon the negation of that finding. If that finding stands, both the defence and the counterclaim of the defendants. fall. We therefore address ourselves to that decisive question of fact, whether the merger was adopted by a two-thirds vote.

.Perhaps the record of the 1939 convention, including the report of the national executive board, already quoted, was insufficient, taken by itself, to show action by a two-thirds vote. *Coleman* v. *Louison,* 296 Mass. 210, 214, and cases cited. *Bryant* v. *Pittsfield,* 199 Mass. 530, 532. But the fact need not be shown by the record alone.

In some instances, as in acts of public officers, and in the internal proceedings of a private corporation, there has been said to be a "presumption" of regularity and compliance with law. But a presumption is not evidence (*Brown* v. *Henderson,* 285 Mass. 192, 195, 196; *Commonwealth* v. *Clark,* 292 Mass. 409, 415; *Del Vecchio* v. *Bowers,* 296 U. S. 280, 286; *New York Life Ins. Co.* v. *Gamer,* 303 U. S. 161, 170; *Tyrrell* v. *Prudential Ins. Co.* 109 Vt. 6, 23, 24), and we are at the moment concerned, not with presumptions, but merely with the existence of evidence from which an inference of regularity and compliance with the constitution of the Association can be drawn. *Payne* v. *R. H. White Co.* 314 Mass. 63, 65.

An inference of regularity and lawfulness may be drawn with respect to the internal proceedings of a private corpora-

tion.  *Commissioner of Banks* v. *Cosmopolitan Trust Co.*
253 Mass. 205, 216.  *Tapper* v. *Boston Chamber of Commerce,*
235 Mass. 209, 217.  *New York Central Railroad* v. *Central
Vermont Railway,* 243 Mass. 56, 65.  *Cunningham* v. *Com-
missioner of Banks,* 249 Mass. 401, 421.  *Coolidge* v. *Grant,*
251 Mass. 352, 354.  *Gray* v. *Hemenway,* 268 Mass. 515, 519.
*Boston Safe Deposit & Trust Co.* v. *Commissioner of Corpora-
tions & Taxation,* 273 Mass. 187, 195.  *Springfield Young
Men's Christian Association* v. *Assessors of Springfield,* 284
Mass. 1, 8.  Wigmore, Evidence (3d. ed. 1940) § 2534.  Such
an inference is especially strong where there has been long
acquiescence in the corporate action.  In *Whiting* v. *Malden
& Melrose Railroad,* 202 Mass. 298, 307, the validity of a
merger of the assets of the Malden and Melrose Railroad
with those of the West End Street Railway, effected many
years before, was in issue.  As a condition of such a merger,
a statute required an agreement by the directors and stock-
holders of each corporation.  No such agreement could be
produced.  But the West End Company had reported to
the railroad commissioners that it owned the assets of the
Malden and Melrose Railroad, and for many years it treated
those assets as its own with the acquiescence of the latter
corporation.  It was held "fair to infer that this business
was done lawfully, by an agreement of the directors of the
two companies, and was confirmed by corporate action."
It was said that "it is not to be assumed, from a mere failure
to present evidence of the particulars of the action, that the
acquisition of this stock and property was unlawful, and
that all the action of the West End Company for more than
twenty years in reference to the property has been contrary
to law."

In our opinion the good sense that underlies the principle
applied in the *Whiting* case requires the application of the
same principle to the internal proceedings of an unincorpo-
rated labor union.  In *Rowan* v. *Possehl,* 173 Misc. (N. Y.)
898, an inference of regularity and legality was drawn where
the actual facts were not shown with respect to the adoption
by a labor union of a new constitution by referendum vote.

The evidence relied on by the defendants to show that

the merger was not adopted by a two-thirds vote established nothing clearly. It came from three witnesses, Chenery, Boyle and Regan. Chenery was president of the Association and also a member of its national executive board at the time of the referendum and also at the 1939 convention. He was a member of the executive board of the Leather Workers Division thereafter, and presided at the 1940 convention, where he both signed and received the report of the executive board. Boyle was secretary-treasurer of the Association and a member of its national executive board at the foregoing times in 1939, and read the report of that board to the 1939 convention. He was thereafter secretary-treasurer of the Leather Workers Division and a member of its executive board, and signed and read the report of that board to the 1940 convention. Regan was the attorney for the Association at the foregoing times in 1939, and advised its national executive board with respect to the returns from the referendum and to their report thereon. These witnesses, and all the members of the national executive board, knew that the Constitution required a two-thirds vote to effectuate the proposed merger.

None of these witnesses testified that a two-thirds vote was not obtained. In general they testified merely that they were not convinced, or did not recollect, that a two-thirds vote was obtained in favor of the merger. A tabulation of the votes in certain Massachusetts locals, some of them testified, failed to show a two-thirds vote in favor of the merger. Many locals, mostly in other States, failed to return the exact number of votes cast each way, but merely reported that the merger had carried. How the national executive board were satisfied of the existence of a two-thirds vote favorable to the merger, did not appear. But Boyle testified that he had tabulated the returns received from the locals, and that the report of the national executive board to the 1939 convention was not at variance with his report to them. All the witnesses agreed that a majority favored the merger. Chenery testified, however, that the merger was so much in the interest of the members of the Association that "I as a board member felt that it was my

duty to forget the constitution." In general, it may be said that the utmost effect of their testimony was to cast doubt upon the existence of a two-thirds vote favoring the merger.

Chenery and Boyle joined in, and Regan approved, the report of the national executive board to the 1939 convention in which the merger plan was said to have been "carried by our Locals," and in which the result was said to have been that "our membership is in favor of such a merger." Chenery and Boyle joined also in the report of the executive board of the Leather Workers Division to its convention in 1940, which contained the assertion that "the merger was approved by the membership of both organizations." If they believed that a two-thirds vote had not been obtained, the literal truthfulness of their reports could be supported only by the quibble that the words "carried" and "approved" imported no more than a majority vote. Obviously the members of the executive board in each year intended their report to induce in the members of the Association the belief that the merger had been adopted by such a vote as was needed to make the merger effective; and that, as the members of the executive board knew, was a two-thirds vote. They knew that a mere majority vote was in effect a negative vote. If they believed that a two-thirds favorable vote had not been obtained, the report of that board in each year contained a wilfully false representation of fact.

The judge was not bound to attribute to these witnesses for the defendants such deliberate fraud upon the membership of the Association, even though some of them hinted at such fraud in their testimony. It has often been said that there is a "presumption" that the conduct of a person is lawful, regular, proper, innocent, honest and in good faith, and this because most human conduct is of that sort. *Jones* v. *McLeod,* 103 Mass. 58. *Goddard* v. *Rawson,* 130 Mass. 97, 99. *National Vinegar Co.* v. *Jaffe,* 261 Mass. 86, 88. *Janevesian* v. *Esa,* 274 Mass. 231, 233. *Dondis* v. *Lash,* 277 Mass. 477, 485. *Hunt Drug Co.* v. *Hubert,* 298 Mass. 195, 196. *Payne* v. *R. H. White Co.* 314 Mass. 63, 66. That is not only a technical presumption, one "of law," but is also

(to use the older expression now falling into disuse) a presumption "of fact," which means that an inference that conduct is of that sort is warranted even when not required. In other words (to use an expression already defined by this court), human conduct is "prima facie evidence" of its own propriety, or is "prima facie" proper. *Payne* v. *R. H. White Co.* 314 Mass. 63, 65. This appears from many cases, some of which are collected in a footnote. [1]

The credibility of the testimony of the witnesses upon whom the defendants rely was primarily for the judge who saw and heard them. He may have rejected part or all of their testimony as not deserving of weight, when compared with their acts and those of others in accepting the merger as duly adopted, or when compared with the probability that officers of the Association would act honestly under the known requirements of its constitution. A familiar rule is that the decision of a trial judge upon a question of fact depending upon the credibility of oral evidence will not be reversed unless plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 83, 84. *Boston* v. *Santosuosso*, 307 Mass. 302, 331, 332. *Perkins* v. *School Committee of Quincy*, 315 Mass. 47, 53. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. *New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, 643, 644. In this case we cannot say that the decisive finding made by the judge was wrong.

*Decree affirmed with costs.*

---

[1] *Hatch* v. *Bayley*, 12 Cush. 27, 30. *Jones* v. *McLeod*, 103 Mass. 58. *Barron* v. *International Trust Co.* 184 Mass. 440, 443. *Aberthaw Construction Co.* v. *Cameron*, 194 Mass. 208, 215. *Conroy* v. *Mather*, 217 Mass. 91, 95. *Collector of Taxes of Boston* v. *Rising Sun Street Lighting Co.* 229 Mass. 494, 497. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 336. *Janevesian* v. *Esa*, 274 Mass. 231, 233. *Dondis* v. *Lash*, 277 Mass. 477, 485. *Broughton* v. *Boston & Maine Railroad*, 290 Mass. 80, 82. *Doyle* v. *Goldberg*, 294 Mass. 105, 109. *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 290. *Higgins* v. *Gilchrist Co.* 301 Mass. 386, 390. *Ryan* v. *DiPaolo*, 313 Mass. 492, 494.