WONG FUEY YING, by her next friend, Wong Gim Goon

v.

John Foster DULLES, Secretary of State of the United States.

Civ. A. No. 52–1266.

United States District Court
D. Massachusetts.

Jan. 26, 1956.

---

James E. Fitzgerald, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for defendant.

ALDRICH, District Judge.

This is a petition for declaration of nationality brought by Wong Gim Goon on behalf of Wong Fuey Ying, a minor, his alleged daughter, hereinafter called plaintiff. Wong Gim Goon, though born in China, is a United States citizen. He came to this country in 1920 at the age of 11. He returned to China three years later and married Hom Shee, since deceased. They had three sons, Wong Fuey Giang, Wong Fuey Fong, and Wong Fuey King. Wong Gim Goon returned to this country, but later went back to China, his last visit there being from 1935 to 1937. A daughter, Wong Fuey Ying, was born in November, 1936. The sole question is, is the plaintiff Wong Fuey Ying, or a pretender?

Wong Fuey Ying was one year old the last time Wong Gim Goon saw her. He has seen none of his family since. He says he received letters from them, but could produce no letters except one written by the plaintiff. I attach little weight to that letter, as it was written after the commencement of the passport proceedings. He says he sent her some money, but it does not appear that this was before the application for the passport. He has been unemployed since 1938.

The evidence of plaintiff's identity as Wong Fuey Ying consists initially of her testimony to the United States consul, and some letters submitted by her from her two alleged older brothers, the whereabouts of the youngest being unknown. The brothers claimed that they could not obtain permission from the Communists to come to Hong Kong to testify for her. A question of some importance arises, whether these letters were in fact from Wong Fuey Giang and Wong Fuey Fong, as alleged.

Wong Gim Goon, who was the sole witness at the trial, spoke good English and appeared to understand it well. He sought to identify the aforesaid letters now in the government file as coming from his two older sons. He was asked if he could identify their handwriting from familiarity gained therewith prior to his leaving China in 1937. He answered in the affirmative, replying to subsequent questions that he had acquired familiarity then as to both boys by seeing them write their school work. Apart from the fact that this was nearly twenty years ago, on cross examination he testified that it takes about four years to learn to write Chinese, that his oldest boy had just started literary school in 1937, and that his second boy did not start school until even later. It was apparent to the witness that the identification of these letters was an important matter, and I cannot regard his complaisance on direct examination other than unfavorably.

Wong Gim Goon testified that the plaintiff was in fact Wong Fuey Ying. Since he had seen neither her nor any member of the family since she was one year old, I admitted this evidence only with reservations. If it was technically admissible, which I question, it has very little probative force by reason of the above circumstance, as well as by reason of the witness' direct testimony about the handwriting, and some other less important discrepancies. The same applies to his identification of a 1952 photograph of the plaintiff, which was apparently the first he ever saw.

Finally, there were offered nine letters which Wong Gim Goon had written the plaintiff. Since all of these were subsequent to the date of his affidavit of October, 1951 they scarcely advance matters, other than perhaps to show that she was known as Wong Fuey Ying at the place he addressed her. Indeed, these letters are so self-serving as to induce some skepticism. I have somewhat the same feeling about the letters from the purported brothers.

As against this the government's evidence is that two blood tests were taken of the plaintiff at Hong Kong, both showing that her blood was type N, and that a test of Wong Gim Goon shows that his is type M. A government physician testified that a parent with type M blood can have children only with type M, or type MN. The plaintiff in argument attacks the credibility of this testimony, as a matter of expert theory. What the government's expert evidence was going to be was known in advance, and it was open to the plaintiff to contradict it if it was incorrect. No contradiction was presented.

■ The plaintiff also argues that the tests may not have been properly conducted. There is a presumption of regularity. John Hancock Mut. Life Ins. Co. of Boston v. Plummer, 181 Md. 140, 28 A.2d 856; Moroni v. Brawders, 317 Mass. 48, 57 N.E.2d 14. I heard no evidence suggesting that these were tests calling for unusual medical skill to make, or to interpret. The plain-

tiff's case is not of such strength as to cause me to question their validity.

■ Finally, plaintiff says that blood tests should not be considered in any event. Blood groupings have been recognized medically for years, and I am not prepared to say that a court should not recognize them. Many other courts have received them. Kemp v. Government of Canal Zone, 5 Cir., 167 F.2d 938; Beach v. Beach, 72 App.D.C. 318, 114 F.2d 479; Note, 163 A.L.R. 939; cf. Mass.G.L.(Ter.Ed.) Ch. 273, § 12A.

The complaint is dismissed.